[No. 70. Decided June 2, 1890.]

FRED. GASCH, JOHN WOODING AND W. H. TAYLOR, *the Board of County Commissioners of King County*, v. GRIFFITH DAVIES AND WILLIAM D. WOOD.

CONSTITUTIONAL LAW — REPEAL OF ACT BY IMPLICATION — TITLE OF STATUTE — EXTENSION OF CORPORATE LIMITS.

The act of the legislature approved February 26, 1890 (Laws Wash. 1889-90, p. 227), entitled "An act to provide for extending and enlarging the corporate limits of any city, town or village in this

state, and for consolidating and uniting cities, towns and villages, and declaring an emergency," is repealed by implication by the act approved March 27, 1890 (Laws 1889-90, p. 131), on the same subject, entitled "An act providing for the organization, classification, incorporation and government of municipal corporations, and declaring an emergency." (HOYT, J. dissents.)

Where there is a conflict in the statutes on the same subject passed by the legislature at the same session, and the result of action under the one would be substantially different from what it would be under the other, the statute last enacted will prevail, and the prior statute will be considered as having been repealed by implication.

The title of the act approved March 27, 1890, in relation to the incorporation of cities and towns is broad enough to include the sections in the act providing for their enlargement and consolidation.

*Appeal from Superior Court, King County.*

E. M. Carr, Prosecuting Attorney, J. C. Haines, and H. R. Harris, for appellants.

Junius B. Rochester, for appellees.

The opinion of the court was delivered by

STILES, J. — Plaintiffs in error constituted the board of county commissioners of King county, to whom in the month of May, 1890, a resolution of the city council of Seattle was addressed, requesting the board to submit to the qualified electors of the city and of certain territory adjacent to the city, the question of extending the corporate limits of the city over the adjacent territory therein described.  Twenty-five residents and freeholders of the adjacent territory joined in preferring the request.  The board refused the request, and for the purpose of obtaining a judicial construction of the law of the case, joined with the defendants in error in a friendly action in the superior court of King county, substantially in the form of a petition for a writ of mandate against the board to require it to proceed in accordance with the request, under the provisions of the act of the legislature approved February

26, 1890, entitled "An act to provide for extending and enlarging the corporate limits of any city, town or village in this state, and for consolidating and uniting cities, towns and villages, and declaring an emergency." It was agreed that the terms of the act had been complied with in all formal requirements of it, and the defense of the board was based upon two grounds, viz.: 1. That the territory proposed to be annexed was in two widely separate tracts. 2. That the act of February 26th was repealed by implication by an act approved March 27, 1890, entitled "An act providing for the organization, classification, incorporation and government of municipal corporations, and declaring an emergency." The court below held against the board, and this writ of error is to obtain a review of its decision.

The first objection raised by the board would furnish matter for serious discussion owing to the peculiar situation of the territory proposed to be included within the city limits; but as we shall hold that the second objection is well taken, it will not be necessary that we discuss or decide the first.

The act of February 26th provided three methods by which outside territory might be brought within the corporate limits of an existing city, town or village. By the first method, a petition of a majority of the legal voters of the territory proposed to be annexed, addressed to the legislative authority of the municipal incorporation, was sufficient authority for the passage of an ordinance declaring the annexation. By the second method, if the owner of land adjacent to a municipal incorporation lays it off as an addition to the city, town or village, the whole tract thereafter becomes a part of the incorporation, *ipso facto*, for all purposes. By neither of the above methods is any record of the new corporate boundaries made with the board of county commissioners or the secretary of state. But under the third method, however, the element of consent on the part of the outside parties, being neither present nor pre-

sumed, an entirely different course is prescribed. The council or board of trustees must first, by ordinance, request the board of county commissioners to call an election, and twenty-five residents and freeholders (not necessarily electors) of the territory proposed to be annexed must join in preferring the request, which, although it is thus mildly denominated, by the terms of the act, operates as a command which the board cannot refuse to obey. But the commissioners, from that point in the proceedings, take entire charge of the matter; a majority of the whole number of the votes cast of qualified electors within and without the municipality determines the question of annexation; the county pays the expenses of the election; and thus a record of the new boundaries is made with the commissioners, but not with the secretary of state. Section 10 of the act would seem to make it applicable only to cities having a population of ten thousand or upwards. Thus stood the law until March 27th, when the second act, the title of which has been given, was approved, and under its emergency clause went into immediate effect. Section 9 of this latter act commences with these words: "The boundaries of *any* municipal corporation may be altered and new territory included therein, after proceedings had as required in this section," and follows with a complete method of proceeding on that subject. It is to be regretted, however, that the legislature did not add to the above quoted sentence the words "and not otherwise," or other equivalent words, so that what we believe to have been its real intent might have been fully and exactly expressed.

Without quoting from the act, we note the following points of difference between it and the former act, which are so radical as that, in our view, they seem to create a new system for extending boundaries, which precludes the existence of any other in the legislative mind. In this act there is no restrictive operation to cities of ten thousand; the moving cause of action in the premises is a petition of

one-fifth or more of the electors of the municipality, which being received, the counsel must submit the question of annexation to electors within and without; the votes must be canvassed separately by the council, and there must be a majority of each body of electors for the annexation to carry it; an abstract of the vote must be transmitted to the secretary of state, where all other matters pertaining to incorporations, both public and private, are filed of record; and last, but by no means least of all, the newly annexed territory can never be charged with any of the indebtedness of the old corporation.

It was suggested in argument that inasmuch as no memtion is made in the title of this act of the enlargement or consolidation of municipal corporations, §§ 9 and 10 are void, by § 19, article 2, of the constitution.   But we think that the term "incorporation," which is used, is certainly broad enough to include these proceedings, which are analogous to the supplemental articles of a private corporation increasing its capital stock.   See the discussion of the subject of titles of statutes, under similar constitutional limitations, in Cooley, Const. Lim. (5th ed.). p. 170, et seq.

Likewise we cannot agree that this act was not intended to affect municipal incorporations existing at the time of its approval.   Under its express terms certain corporations attempted to be organized under the void act of February 2, 1888, are mentioned and provided for, and it is the law of all existing corporations in so far as they are given the authority to adopt its provisions as to government and classification.   One thing is certain, that if the act of February 26th is the only law authorizing the extension of corporate limits, and if its operation is limited to cities of ten thousand and upwards, then there are only three cities in the state at this time which can enlarge their boundaries unless they first become re-incorporated under the act of March 27th, since there are only three which have a population of ten thousand.

The principal contention, however, on the part of the applicants for the writ was, that the two acts at most embrace the same subject-matter, and, being so and having been passed at the same session of the legislature, they ought to be construed as parts of one act, so that both might stand.     And if the circumstances were such as to admit of following that course, we should certainly follow it, for the rules of construction in cases of this kind are too well known not to be observed.     But two statutes thus placed must not necessarily conflict, and if they do, the latter one must prevail; and whenever the latter statute is so framed as that its provisions would or might, in a given case, make the result of action under it substantially different from the result of action under a former statute on the same subject, the latter and the former are in conflict, and the latter will be taken to prescribe the only rule which is to be accepted as governing the case provided for, and to repeal the earlier law by implication.     Endlich, Interp. St., § 200.

We have noted the difference in the procedure under these two acts; now the practical difference in the result of action under each may be thus illustrated.     Suppose that the commissioners in this instance had not declined to act, but had proceeded to call the election as requested, and suppose that the electors of the city, five thousand in number, had voted unanimously for the annexation, and the electors of the outside territory, two thousand in number, had voted against it; a majority of the seven thousand electors would have carried the proposition for annexation.     But had the election been held under the act of March 27th, with precisely the same vote cast, annexation would have been defeated for want of a majority of the outside electors favoring it.     In the one case the vote of the outside elector would count for nothing, while in the other his vote would have equal weight as that of his inside neighbor.     Or, suppose that while the election ordered by the commissioners was pending, enemies of the annexation proposition resid-

ing within the city, to the number of one-fifth or more of the electors, believing that although annexation would be carried under the first act, it would be defeated under the second, because a majority of both city and suburban voters could not be had, had presented their petition to the council for an election under the second act; the requirement of § 9, that the council proceed according to the prayer of the petition, seems to be mandatory, and it must call, provide for, and hold the election as demanded, and the consequent confusion may be better imagined than described. These possibilities confirm us in our view, taken coldly from the bare legal aspect of these two laws, that they cannot stand together, and we therefore hold that the action of the commissioners in refusing to act was their proper course.

The judgment of the court below is reversed, with directions to dismiss the application for the writ of mandate. Costs to plaintiff in error.

ANDERS, C. J., and DUNBAR and SCOTT, JJ., concur.

HOYT, J. (dissenting). — As the judgment of this court is final, and as the particular questions presented are not of general interest, except as to the holding of this court as to the particular statute in question, it would be profitless for me to enter into a lengthy discussion of the reasons that compel me to dissent from the conclusion of the majority of the court in this cause. I shall, therefore, content myself with saying, that, as the two acts in question were passed at the same session of the legislature, and therefore should be construed as a single act, I think that they can stand together. In the first act the legislature had provided three distinct methods for enlarging the boundaries of cities, and I think it consistent to hold that in the other act they intended to provide a fourth method of accomplishing the same purpose.