[Nos. 26924, 26964, 26965.  *En Banc.*  February 9, 1938.]

THE STATE OF WASHINGTON, *on the Relation of Luella Shomaker et al., Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *James B. Kinne, Judge, Respondent.*[1]

[1]Reported in 76 P. (2d) 306.

466

*Stevenson & Gershon,* for relators.

*The Attorney General* and *Harry L. Parr, Assistant,* for respondent.

SIMPSON, J.—This action is an original petition in this court by relators for writs of mandate to compel the superior court of King county to assume jurisdiction in an action brought in that court against Charles F. Ernst, director of the department of social security, and Nelson B. Neff, supervisor of old age assistance for the state of Washington.

Three actions are consolidated in this court for argument and decision, for the reason that they present the same question for determination.

The petition of relator Joel Buell Shomaker alleges that he has no income except twelve dollars per month which he receives in the nature of a pension from the United States army; that he applied for old age assistance and his application was denied (not stated by whom). Being dissatisfied with this ruling, in accordance with § 12, chapter 180, Laws of 1937, p. 706, Rem. Rev. Stat. (Sup.), § 10007-112, he appeared before the board of county commissioners of King county on October 4, 1937, and, after a hearing, such board granted the application and directed the payment of eighteen dollars monthly to the relator, none of which has been paid; that thereafter he sued out an alternative writ of mandate in the superior court of King county, which was returnable on November 15, 1937, at which time hearing was had. Thereafter, the trial

court prepared a memorandum opinion in which it stated that the writ prayed for by relator sought to compel the state officers to issue warrants on state funds, and that, therefore, the suit was one involving the state and its funds and came directly within the provisions of Rem. Rev. Stat., § 886 [P. C. § 6260], and should be brought in the superior court for Thurston county.

The relator died before this matter was finally presented in this court, and on January 3, 1938, an order was made substituting Luella Shomaker, administratrix, as relator in this action.

Relator Luella Shomaker contends in her application for a writ of mandate that she applied for public old age assistance, which was rejected by Ernst and Neff; that thereafter, being dissatisfied with such decision, she appeared before the board of county commissioners of King county relative to her objections to such rejection, in accordance with § 12, chapter 180, Laws of 1937, p. 706; that the board of county commissioners granted the application, reversed the above ruling, and directed the payment of thirty dollars monthly to relator. She contends that director Ernst and supervisor Neff refused to recognize the decision of the board of county commissioners and have refused to pay her the public old age assistance of thirty dollars per month, paying her only the sum of seventeen dollars per month; that thereafter she applied for a writ of mandamus in the superior court of King county to compel director Ernst and supervisor Neff to pay to her the sum of thirty dollars per month. Hearing was had thereon and the trial court made an oral decision to the same effect as contained in its memorandum opinion in the case of Joel Buell Shomaker.

Relator Henry W. Lung alleges in his petition for a writ of mandate as follows:

"That on June 1, 1937, the relator applied for old age assistance under the Social Security Laws of the state of Washington; that although the relator is fully eligible in every manner for the payment of the old age assistance for which he applied, *he has received no notice of any kind of any decision by the Department of Social Security or any of its agents, either in writing or orally,* nor has he been granted any old age assistance of any kind whatsoever; that the failure of Charles F. Ernst and Nelson B. Neff to render a decision in writing upon the application of the relator within three (3) months from the date said application was filed and to render him the old age assistance prescribed by the statutory law of this state, is wholly arbitrary and unlawful. . . ." (Italics ours.)

Thereafter, he applied for a writ of mandate in the superior court of King county to compel director Ernst and supervisor Neff to render their decision in writing on the question of whether relator's application for old age assistance was approved or rejected. Upon a hearing on that case, the trial court orally made the same decision as contained in its memorandum opinion in the case of Joel Buell Shomaker.

Entry of the formal orders embodying these rulings was delayed by the superior court in order to afford an opportunity for the relators to apply to this court for writs of mandate.

The question presented for decision in the cases of Joel Buell Shomaker and Luella Shomaker is whether or not the superior court of King county had jurisdiction to hear and determine an action brought against director Ernst and supervisor Neff for the purpose of requiring them to spend money for old age assistance. It is plain that director Ernst and supervisor Neff are state officers, and that the money to be expended for old age assistance comes from the state fund. Chapter 111, Laws of 1937, p. 442, creates the department of social security and provides for the appointment of

several state officers, among whom are a director of social security and a supervisor of old age pensions. Section 18, chapter 180, Laws of 1937, p. 708, Rem. Rev. Stat. (Sup.), § 10007-118, makes an appropriation of money from the general fund of the state for the purpose of paying old age assistance.

Since Charles F. Ernst and Nelson B. Neff are state officers and are admittedly acting under a valid statute in the capacity of state officers, and relators Joel Buell Shomaker and Luella Shomaker seek payment of money from a state fund, the actions must be brought in Thurston county.

The rule is well settled that an action cannot be maintained against the state without its consent, and when the state does so consent, it may fix the forum in which it may be sued.

Article II, § 26, of the state constitution provides:

"The legislature shall direct by law in what manner and in what courts suits may be brought against the state."

Rem. Rev. Stat., § 886, in giving effect to this provision, provides:

"Any person or corporation having any claim against the state of Washington shall have a right of action against the state in the superior court of Thurston county. . . ."

Interpreting the above section of the code in its application, we said in *State ex rel. Pierce County v. Superior Court,* 86 Wash. 685, 151 Pac. 108:

"It is well settled that an action cannot be maintained against the state without its consent, and that the state, when it does so consent, can fix the place in which it may be sued, limit the causes for which the suit may be brought, and define the class of persons by whom it can be maintained. In other words, the state being sovereign, its power to control and regulate the right of suit against it is plenary; it may grant the

right or refuse it as it chooses, and when it grants it may annex such condition thereto as it deems wise, and no person has power to question or gainsay the conditions annexed. This state has, by its constitution (art. 2, § 26), empowered the legislature to direct by law in what manner and in what courts suits may be brought against it, and the legislature has provided that all such suits shall be brought in the superior court of Thurston county. Rem. & Bal. Code, § 886 (P. C. 453, § 9).

"The suit in question, while in form a suit against certain of its executive officers in their representative capacities, is in essence and effect a suit against the state. The suit is instituted to restrain these officers, the one from certifying that certain sums payable out of the state treasury has been earned in the performance of a contract in which the state has an interest, and the other from drawing warrants on the state treasury for the payment of such certificates, if any are so presented to him. *The funds involved are the funds of the state. The officers sought to be enjoined have no interest in the funds.* They are merely the agents of the state by and through whom the state acts." (Italics ours.)

In *State ex rel. Pate v. Johns,* 170 Wash. 125, 15 P. (2d) 693, in an action which was brought to compel the regents of the state university to reimburse plaintiff for funds theretofore taken from him for tuition fees in the university and further to restrain the regents from making certain additional charges for tuition, this court held that such action was one against the state and must be brought in Thurston county, since the relief sought affects the right of the state to collect revenue paid into the state treasury. It was said by the court:

"Here, the state is interested in the enforcement of one of its laws designed to produce revenue for the help and maintenance of its University. In this affair, the state has a real, direct and positive interest."

In *State ex rel. Slade v. Jones,* 182 Wash. 94, 45 P. (2d) 30, it was sought to compel the superior court of King County to assume jurisdiction of an action against the state which involved the recovery of damage occasioned by reason of the flooding of certain lands during the construction of a highway. The court conceded that, when the state takes real estate, acting in its sovereign capacity, the owner may recover damages from the state; but since this involved a purely monetary claim, the court denied the writ, stating that such an action must be instituted in Thurston county. The court stated:

"In *State ex rel. Robinson v. Superior Court,* 181 Wash. 541, 43 P. (2d) 993, we held that an action against a state officer, acting without the scope of his lawful authority, was not one against the state and was properly maintainable in the county where the unlawful acts were being committed, citing as one of the authorities therefor the *Walla Walla* case, *supra.*

"This is not such a case, but is an action against the state purely upon money claims. In such cases, the state has an undoubted right to determine the forum in which it will be sued. It has declared that the superior court for Thurston county is the forum in which it consents to be sued upon such money demands as are involved herein."

In *Weber v. School Dist. No. 7,* 185 Wash. 697, 56 P. (2d) 707, we held an action against the state tax commission by a school district, brought to restrain the collection of a tax against the district, was in fact an action against the state and could be maintained only in the superior court for Thurston county.

The constitutionality of the statute under consideration is not raised here, and there has been no showing that director Ernst and supervisor Neff are acting outside the scope of their authority. Therefore, the cases of *State ex rel. Robinson v. Superior Court,* 181 Wash. 541, 43 P. (2d) 993, *State ex rel. Robinson v. Superior*

*Court,* 182 Wash. 277, 46 P. (2d) 1046, and *Wiegardt v. Brennan,* 192 Wash. 529, 73 P. (2d) 1330, are not applicable to the case at bar.

Relators cite *State v. Superior Court for Walla Walla County,* 167 Wash. 334, 9 P. (2d) 70, in which state officers took land for public use, and this court held that the state could not compel plaintiffs to sue in Thurston county, and that the state, like any other appropriator of private property, must go to the courts having local jurisdiction of the property unlawfully taken.

The distinction between the case just mentioned and those in which an action is brought against state officers involving state funds, such as we have here, is clearly pointed out in *State ex rel. Pate v. Johns, supra.*

■ There has been no showing made that the application of relator Henry W. Lung was initially presented to the local administrator or to the director of social security. All that appears is that application was made to the department of social security for old age assistance and the department has not rendered a decision with respect to such application.

In order to ascertain what steps must be taken to secure old age assistance, it is necessary to examine chapters 156 and 180 of the Laws of 1937, pp. 548, 697, both of which relate to the payment of money for old age assistance.

Chapter 156, Laws of 1937, p. 548, Rem. Rev. Stat. (Sup.), § 9998-3 *et seq.,* contains the following provisions:

§ 3. "A person requesting old-age assistance under this act shall make his application therefor to the department of social security . . ." Rem. Rev. Stat. (Sup.), § 9998-5.

§ 5. "Whenever the department of social security receives an application for an old-age assistance grant, an investigation and record shall be promptly made

of the circumstances of the applicant. . . ." Rem. Rev. Stat. (Sup.), § 9998-7.

§ 6. "Upon the completion of its investigation, the department of social security shall decide whether the applicant is eligible for and should receive an old-age assistance grant under this act, the amount of the assistance, the manner of paying or providing it and the date on which the assistance shall begin. The department may make such additional investigation as it may deem necessary, and shall make its decision as to the granting of assistance and the amount and nature of assistance to be granted the applicant as in its opinion is justified and in conformity with the provisions of this act. The department shall notify the applicant of its decision in writing. . . ." Rem. Rev. Stat. (Sup.), § 9998-8.

Section 5 of chapter 156, Laws of 1937, p. 550, also grants to an applicant the right to appeal from the decision of the director to the superior court of the county of his legal residence.

It is therefore manifest that chapter 156, Laws of 1937, contemplates that the application for old age assistance must be presented initially to the state department of social security.

Chapter 180, Laws of 1937, p. 697, Rem. Rev. Stat. (Sup.), § 10007-101 *et seq.*, provides in part:

§ 7. ". . . The board of county commissioners shall employ an officer whose title shall be 'Administrator' and who shall be chief executive officer for the administration of public assistance in each county. . . . " Rem. Rev. Stat. (Sup.), § 10007-107.

§ 8. ". . . The administrator shall grant public assistance only after adequate investigation and certification of need. . . ." Rem. Rev. Stat. (Sup.), § 10007-108.

§ 12. "It is hereby provided that any applicant for or recipient of public assistance, as provided in this act, who shall be dissatisfied with the decision on his application for such assistance, may appear before the board of county commissioners in the county in which

he resides, relative to said complaint. If such complainant is still dissatisfied, he may appeal to the director, and upon such appeal an opportunity shall be granted for a fair hearing.

"If an application is not acted upon by the local administrative unit within a reasonable time after the filing of the application, or is denied or revoked, the applicant may appeal to the department in the manner and form prescribed by the department. . . ." Rem. Rev. Stat. (Sup.), § 10007-112.

The last named section also grants to an applicant the right to appeal from the decision of the director to the superior court of the county of his legal residence.

It is clear from a reading of these two chapters that chapter 180 provides a different administrative procedure for the presentation of applications for old age assistance than that provided for in chapter 156.

As has been pointed out, the initial application provided for in chapter 156 is made to the department of social security, whereas under the provisions of chapter 180 the initial application for assistance is made to the county administrator. Under the provisions of chapter 156, an appeal can be taken directly from the order of the director of social security, but under the provisions of chapter 180, the appeal is made, first, from the decision of the county administrator to the board of county commissioners. Then, if the applicant is dissatisfied, he may appeal to the director of the state department of social security. From his decision, an appeal is provided to the superior court.

Since the administrative procedure which an applicant must pursue in presenting his application for old age assistance, under chapter 156, is in direct conflict with the procedure set out in chapter 180 of the Laws of 1937, it becomes necessary to determine which of these two chapters governs.

We find that chapter 156 was approved by the governor on March 15, 1937, whereas chapter 180 was approved by the governor on March 17, 1937. Chapter 156 did not contain an emergency clause, whereas chapter 180 did contain an emergency clause and § 24, p. 710, Rem. Rev. Stat. (Sup.), § 10007-124, thereof provided that chapter 180 should take effect on April 1, 1937.

A conceded general rule of statutory construction is that repeals by implication are not favored, and that, where there are provisions relating to the same subject matter embodied in different statutes, they should be harmonized so as to maintain the integrity of both whenever it is possible.

However, the administrative procedure to be followed in presenting applications for old age assistance in the chapters just referred to, as has been pointed out, cannot be harmonized. Since the later of the two conflicting statutes, namely chapter 180, Laws of 1937, contains an emergency clause, that statute controls in so far as chapter 156, Laws of 1937, is inconsistent therewith.

In *Whitfield v. Davies,* 78 Wash. 256, 138 Pac. 883, this court said:

"We have held that the later of two conflicting statutes passed at the same session of the legislature prevails over the earlier one, and impliedly repeals it. *Commissioners of King County v. Davies,* 1 Wash. 290, 24 Pac. 540. We have said that this rule is peculiarly pertinent where the later act contains an emergency clause. *Heilig v. City Council of Puyallup,* 7 Wash. 29, 34 Pac. 164."

In *Heilig v. City Council of Puyallup,* 7 Wash. 29, 34 Pac. 164, we said:

"But we are also of the opinion that where two conflicting acts upon the same subject matter are passed at the same session of the legislature, and their conflict

is such that they cannot be harmonized and stand together, and one of them contains an emergency clause and the other does not, that one containing the emergency clause must be taken to overcome the other. The simple fact of there being an emergency clause would tend to show that the subject matter of the act was more clearly and pointedly before the legislature than the subject matter of the other act."

Where two acts relating to the same subject matter are passed at the same session of the legislature and embrace the same subject matter and are in conflict, the later one must prevail. *Commissioners of King County v. Davies,* 1 Wash. 290, 24 Pac. 540; *Gunther v. Huneke,* 58 Wash. 494, 108 Pac. 1078.

We conclude, therefore, that the provisions of chapter 180, Laws of 1937, govern the procedure necessary to be followed in order to secure old age assistance, or to prosecute appeals in those cases in which the applicant for old age assistance is dissatisfied.

Chapters 111, 156 and 180, Laws of 1937, established an administrative state department to serve as a state agency in the administration of all public assistance programs.

It seems to us from a consideration of the statutory enactments that the legislature intended to and did provide not only for old age assistance, but also for the manner in which it could be obtained and also defined the procedure necessary to be followed.

It is apparent that relator Henry W. Lung did not follow the procedure provided by chapter 180, Laws of 1937. Had he done so, he would have a right to appeal to the board of county commissioners regardless of the action, or lack of action, on the part of the administrator, because § 12, chapter 180, allows an appeal upon the expiration of a reasonable time after the application was presented. Not having availed himself of the provisions of the effective statute, chap-

ter 180, Laws of 1937, he cannot now invoke the aid of the courts.

The applications for the writs of mandate will be denied.

ALL CONCUR.