[No. 83745-7.   En Banc.]
Argued November 16, 2010.     Decided January 12, 2012.

ZDI Gaming, Inc., *Respondent*, v. The Washington State
Gambling Commission, *Petitioner*.

*Robert M. McKenna, Attorney General,* and *Jerry A. Ackerman, Assistant,* for petitioner.

*Joan K. Mell* (of *III Branches Law PLLC*), for respondent.

¶1 CHAMBERS, J. — This case was filed in a county other than where it was to be adjudicated. We are asked today to decide whether, as a consequence, the case will not be

heard. We conclude that the proper forum is a question of venue, not the subject matter jurisdiction of superior courts. We affirm the Court of Appeals. *ZDI Gaming, Inc. v. Wash. State Gambling Comm'n*, 151 Wn. App. 788, 214 P.3d 938 (2009).

## FACTS

¶2 For many years ZDI Gaming Inc., a family owned business, has provided " 'just about anything to do with the gambling industry in the state of Washington.' " Administrative Record (AR) at 410 (quoting Verbatim Report of Proceedings (VRP) at 88); Clerk's Papers (CP) at 18. This includes distributing pull-tabs and pull-tab machines. A pull-tab machine is a fairly modern gaming device. A traditional pull-tab involves a paper ticket containing a series of windows that hide numbers or symbols. The player "opens one of the windows to reveal the symbols below to determine if the ticket is a winner." CP at 1026. If the ticket's combination of numbers or symbols matches those listed on a sheet called a "flare" as a winning ticket, the ticket's purchaser is entitled to a prize. *Id.* Modern pull-tab machines can both dispense and read pull-tab tickets and can produce sounds and displays mimicking electronic slot machines.

¶3 In 1973, when gambling was legalized in Washington State, the legislature declared pull-tabs, along with certain other games of chance, would be authorized, but "closely controlled." LAWS OF 1973, ch. 218, § 1 (currently codified as RCW 9.46.010); AR at 410. Accordingly, the Washington State Gambling Commission (Gambling Commission) has heavily regulated pull-tabs and pull-tab machines. *E.g.*, former WAC 230-02-412(2) (2001); former WAC 230-08-017 (2003), former WAC 230-12-050 (2004); former WAC 230--08-010(2) (2004).

¶4 Historically, and broadly in the context of games of chance, the commission prohibited giving gifts or extending

credit to players for the purposes of gambling. Former WAC 230-12-050. Accordingly, players were required to pay the consideration "required to participate in the gambling activity . . . in full by cash, check, or electronic point-of-sale bank transfer, prior to participation," with some exceptions not relevant here. Former WAC 230-12-050(2). The Gambling Commission also had required a pull-tab player to receive winnings "in cash or in merchandise." Former WAC 230-30-070(1) (2001).

¶5 ZDI Gaming distributes the VIP (video interactive display) machine, an electronic pull-tab machine featuring a video display screen, a currency bill acceptor, and (in a later version) a cash card acceptor, all housed in a decorative cabinet. ZDI Gaming intentionally designed the current VIP machine to resemble a video slot machine and programmed it to use the same "attractor" sounds used to lure players. Players see rows of spinning characters that ultimately line up and stop in winning or losing combinations. The version of the machine at issue allows a player to purchase pull-tabs from the machine itself using a prepaid card. The VIP machine credits pull-tab winnings of $20 or less back to the card. If a player wins more than $20, the VIP machine directs the player to an employee to receive payment. A player who stops playing the VIP machine with a balance on the card can use it to purchase food, drink, merchandise, or turn it in for cash at the establishment featuring the VIP machine.

¶6 An earlier version of the VIP machine was approved by the Gambling Commission in 2002. However, once the cash card acceptor was added to the machine, things became more complicated. While initially, it appears Gambling Commission employees were "optimistic" that such technology would be approved, once they understood that a player's winnings would be credited directly back onto the card itself, they became concerned. AR at 14. After working with Gambling Commission staff for some time, ZDI Gaming submitted a formal application to the Gambling Com-

mission requesting permission to distribute the new VIP machine, with the cash card acceptor, in Washington. After the assistant director of licensing operations formally denied the application, ZDI Gaming filed a petition for declaratory relief with the Gambling Commission. An administrative law judge (ALJ) agreed with ZDI Gaming that the VIP machines did not violate gambling statutes. However, he found the machines extended credit and allowed gambling without prepayment by " 'cash, check, or electronic point-of-sale bank transfer,' " violating then-operative regulations. AR at 419, 423 (quoting former WAC 230-12-050). ZDI Gaming strenuously contended the cash card utilized by its VIP machine was functionally equivalent to cash. The ALJ rejected the argument, reasoning that the "difficulty with a cash card is that it's only valid at one location. It is impossible to take the cash card from the Buzz Inn to a local Harley Davidson dealer and purchase a new helmet. . . . [C]ash cards are not cash because they require an additional step on the part of the consumer to utilize in any other location." AR at 420-21. The ALJ also found that the VIP machine violated a regulation that required that all prizes be in either cash or merchandise. AR at 422-23 (quoting former WAC 230-30-070).[1] On August 10, 2006, the full Gambling Commission issued a final declaratory order upholding the ALJ's decision that the VIP machine violated the regulations, though it disavowed the ALJ's decision that the machine complied with the statutory requirements as superfluous. AR at 961-93.

¶7 On September 11, 2006, ZDI Gaming filed a petition for judicial review in Pierce County Superior Court, challenging the validity of the rules the ALJ and the Gambling Commission found it had violated. Ten days later, the State informed ZDI Gaming that, in its view, RCW 9.46.095

---

[1] Perhaps presciently, the ALJ noted that "[t]he Commission was justified in denying approval for the equipment based on violation of the above regulations but has the inherent authority to revise the rules to better comport with the modern realities of the industry if it elects to do so." AR at 423-24. Since then, many of these rules have been revised.

granted exclusive jurisdiction of the matter to the Thurston County Superior Court and suggested that it may wish to withdraw its petition from Pierce County and file in Thurston County before the statute of limitations would run on October 4, 2006. The State told ZDI Gaming that it would otherwise move to dismiss the case for want of jurisdiction after October 4, 2006.[2] ZDI Gaming declined, and the State so moved. Noting that sometimes "when the Legislature uses the word 'jurisdiction,' it really mean[s] 'venue,' " Judge Chushcoff denied the State's motion to dismiss, but did transfer the case to the Thurston County Superior Court. VRP (Dec. 1, 2006) at 5; CP at 8, 17.[3]

¶8 The Thurston County Superior Court reversed the Gambling Commission. It found that cash cards were the equivalent to both cash and merchandise and thus lawful under the regulations. The court denied the Gambling Commission's motion for reconsideration, remanded the case to the Gambling Commission for action, and awarded ZDI Gaming $18,185 in attorney fees under the equal access to justice act, RCW 4.84.350, which was less than ZDI Gaming had sought.

¶9 Both parties appealed. The Court of Appeals affirmed in part, holding that the Pierce County Superior Court had subject matter jurisdiction over the appeal under the Administrative Procedure Act, ch. 34.05 RCW, and that substantial evidence did not support the Gambling Commission's determination that the prepaid cards failed to satisfy the regulatory definition of "cash." *ZDI Gaming*, 151 Wn. App. at 795. The court remanded the case to the Thurston County Superior Court, directing it to reconsider its decision to exclude fees that ZDI Gaming spent responding to the Gambling Commission's motion to dismiss. *Id*. at 812.

---

[2] We are mindful of the fact that the State has acted forthrightly by bringing this issue to ZDI Gaming's attention..

[3] Judge Chushcoff also observed, with a great deal of insight, that "sometimes when the state Supreme Court uses the word 'jurisdiction,' they mean something else." VRP (Dec. 1, 2006) at 5.

The State petitioned for review, contending that the use of the word "jurisdiction" in RCW 9.46.095 was unambiguous, that the courts below erred in concluding that "cash" included cash cards, and that the Court of Appeals shifted the burden of proof to the Gambling Commission. ZDI Gaming answered the petition and sought review of the attorney fee award. We granted the State's petition for review and denied ZDI Gaming's request for review of the attorney fee issue. *ZDI Gaming, Inc. v. Wash. State Gambling Comm'n*, 168 Wn.2d 1010, 227 P.3d 853 (2010).

## ANALYSIS

¶10 Whether Pierce County Superior Court had subject matter jurisdiction over this case is controlled by *Shoop v. Kittitas County*, 149 Wn.2d 29, 37, 65 P.3d 1194 (2002). "[A]rticle IV, section 6 of the Washington Constitution . . . states in relevant part: 'The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court[.]' That provision precludes any subject matter restrictions as among superior courts." *Id.*

¶11 Among other things, jurisdiction is a fundamental building block of law. Our state constitution uses the term "jurisdiction" to describe the fundamental power of courts to act. Our constitution defines the irreducible jurisdiction of the supreme and superior courts. It also defines and confines the power of the legislature to either create or limit jurisdiction. *See* WASH. CONST. art. IV, § 4 (defining the power of the Supreme Court), § 6 (defining the power of the superior courts), § 30(2) (explicitly giving the legislature the power to provide for jurisdiction of the Court of Appeals). Our constitution recognizes and vests jurisdiction over many types of cases in the various courts of this State. WASH. CONST. art. IV, §§ 1, 4, 6, 30. Superior courts have original jurisdiction in the categories of cases listed in the constitution, which the legislature cannot take away.

WASH. CONST. art. IV, § 6; *State v. Werner*, 129 Wn.2d 485, 496, 918 P.2d 916 (1996) (quoting *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 415, 418, 63 P.2d 397 (1936)). As we ruled long ago, "Any legislation, therefore, the purpose or effect of which is to divest, in whole or in part, a constitutional court of its constitutional powers, is void as being an encroachment by the legislative department upon the judicial department." *Blanchard*, 188 Wash. at 415. The legislature can, however, expand and shape jurisdiction, consistent with our constitution. WASH. CONST. art. IV, § 6; *Dougherty v. Dep't of Labor & Indus.*, 150 Wn.2d 310, 316-17, 76 P.3d 1183 (2003). But *Dougherty*, *Shoop*, and *Young v. Clark*, 149 Wn.2d 130, 134, 65 P.3d 1192 (2003), all reject the principle that all procedural requirements of superior court review are jurisdictional. *E.g.*, *Dougherty*, 150 Wn.2d at 316. Simply put, the existence of subject matter jurisdiction is a matter of law and does not depend on procedural rules. 14 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 3.1, at 20 (2d ed. 2009).

██ ██ ¶12 The term "jurisdiction" is often used to mean something other than the fundamental power of courts to act. The current edition of *Black's Law Dictionary* devotes six pages to different types of jurisdiction, ranging from agency jurisdiction to voluntary jurisdiction, touching on equity jurisdiction, in rem jurisdiction, and spatial jurisdiction, along with many others. BLACK'S LAW DICTIONARY 927-32 (9th ed. 2009). Sometimes "jurisdiction" means simply the place or location where a judicial proceeding shall occur. Where jurisdiction describes the forum or location of the hearing, it is generally understood to mean venue. *See, e.g.*, *Werner*, 129 Wn.2d 485.

¶13 In *Dougherty*, 150 Wn.2d 310, we discussed the important distinction between jurisdiction and venue. "Jurisdiction 'is the power and authority of the court to act.'" *Id.* at 315 (quoting 77 AM. JUR. 2D *Venue* § 1, at 608 (1997)). Subject matter jurisdiction is a particular type of jurisdiction, and it critically turns on "the 'type of controversy.'" *Id.*

at 316 (quoting *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 539, 886 P.2d 189 (1994)). " 'If the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction.' " *Marley*, 125 Wn.2d at 539 (quoting Robert J. Martineau, *Subject Matter Jurisdiction as a New Issue on Appeal: Reining in an Unruly Horse*, 1988 BYU L. REV. 1, 28).

¶14 By contrast, as we explained in *Dougherty*, rather than touching on the power or authority of courts to act on certain subjects, venue denotes the setting, location, or place " 'where the power to adjudicate is to be exercised, that is, the place where the suit may or should be heard.' " *Dougherty*, 150 Wn.2d at 316 (quoting 77 AM. JUR. 2D *Venue* § 1, at 608). As we explained in *Dougherty*, if a court has jurisdiction over the subject matter of the controversy, it need not exercise that authority if venue lies elsewhere. *Id.* at 315 (citing *Indus. Addition Ass'n v. Comm'r*, 323 U.S. 310, 315, 65 S. Ct. 289, 89 L. Ed. 260 (1945)). Nor need it dismiss the case even if the statute of limitations lapses before the defect is discovered. *Id.* (citing *Indus. Addition Ass'n*, 323 U.S. at 315 (noting that "where petition timely filed in circuit court as required by statute but in wrong venue, case need not be dismissed but can be transferred to circuit court with proper venue")).

¶15 With these principles in mind, we turn to the statute before us. It says:

> No court of the state of Washington other than the superior court of Thurston county shall have jurisdiction over any action or proceeding against the commission or any member thereof for anything done or omitted to be done in or arising out of the performance of his or her duties under this title: PROVIDED, That an appeal from an adjudicative proceeding involving a final decision of the commission to deny, suspend, or revoke a license shall be governed by chapter 34.05 RCW, the Administrative Procedure Act.

RCW 9.46.095. Read as the State would have us read it, this statute violates article IV, section 6 because it would limit the original jurisdiction of the superior court bench county by county. *Contra Dougherty*, 150 Wn.2d at 317; *Shoop*, 149 Wn.2d at 37; *Young*, 149 Wn.2d at 134 (finding that reading former RCW 4.12.020(3) (1941) to relate to jurisdiction rendered it unconstitutional). Just as our constitution does not allow the legislature to decree that only King County judges have subject matter jurisdiction to hear child dependency actions or that only Pend Oreille County judges have subject matter jurisdiction to hear shareholder derivative actions, our constitution does not allow the legislature to decree that only Thurston County judges have subject matter jurisdiction to hear cases involving the Gambling Commission. If RCW 9.46.095 restricts the original jurisdiction of the superior court to one county, it is unconstitutional.

¶16 We interpret statutes as constitutional if we can, and here we can. The legislature wanted to have cases involving the Gambling Commission heard in Thurston County. By interpreting the word "shall" to be permissive, RCW 9.46.095 relates to venue, not jurisdiction. *Cf. In re Elliott*, 74 Wn.2d 600, 607, 446 P.2d 347 (1968) (interpreting the legislature's use of the term "shall" as permissive to save the constitutionality of an otherwise unconstitutional statute).[4] We therefore hold that the statute establishes the proper venue for judicial review of cases involving the Gambling Commission ruling in Thurston County.

¶17 We recognize that here, the superior court was sitting in its appellate capacity. Our constitution suggests, and our cases have from time to time assumed, that the legislature has greater power to sculpt the appellate jurisdiction of the individual superior courts. *See* WASH. CONST.

---

[4] Interpreting jurisdiction as venue is precisely what the Pierce County Superior Court and the Court of Appeals did below. *ZDI Gaming*, 151 Wn. App. at 801; VRP (Dec. 1, 2006) at 14 ("I do think that although the word 'jurisdiction' is used here, the effective meaning of this is as a venue matter. . . . I will order that the venue be changed to Thurston County.").

art. IV, § 6 ("The superior court ... shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law."). But whether or not the appellate jurisdiction of the superior court can be limited county by county, the simple fact is, *original jurisdiction may not be*. *Werner*, 129 Wn.2d at 494; *Shoop*, 149 Wn.2d at 37 (quoting WASH. CONST. art. IV, § 6). Again, as we held in *Shoop*, "[t]hat provision *precludes any subject matter restrictions* as among superior courts." 149 Wn.2d at 37 (emphasis added).

ARTICLE II, SECTION 26

¶18 The State contends that under article II, section 26 of the Washington State Constitution, the legislature has the authority to limit trial court jurisdiction to consider suits against the State. That provision says that "[t]he legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state." WASH. CONST. art. II, § 26. It is true that prior to the general legislative abolition of sovereign immunity, we held that the legislature could limit which county could hear suits brought against the State under one of the more limited waivers, and often couched the legislature's power in terms of the court's jurisdiction. *See, e.g.*, *State ex rel. Thielicke v. Superior Court*, 9 Wn.2d 309, 311-12, 114 P.2d 1001 (1941); *State ex rel. Shomaker v. Superior Court*, 193 Wash. 465, 469-70, 76 P.2d 306 (1938); *State ex rel. Pierce County v. Superior Court*, 86 Wash. 685, 688, 151 P. 108 (1915); *Nw. & Pac. Hypotheek Bank v. State*, 18 Wash. 73, 50 P. 586 (1897). The classic formulation appears in *Pierce County*:

> the state being sovereign, its power to control and regulate the right of suit against it is plenary; it may grant the right or refuse it as it chooses, and when it grants it may annex such condition thereto as it deems wise, and no person has power to question or gainsay the conditions annexed.

*Pierce County*, 86 Wash. at 688; *see also Thielicke*, 9 Wn.2d at 311-12 ("when a suit against the state is commenced in a

superior court outside Thurston county, such court does not have jurisdiction over the action").

¶19  But in 1961, the Washington State Legislature abolished sovereign immunity. LAWS OF 1961, ch. 136, § 1, codified as RCW 4.92.090. We have recognized that in so doing, the State intended to repeal all vestiges of the shield it had at common law. *See Hunter v. N. Mason High Sch.*, 85 Wn.2d 810, 818, 539 P.2d 845 (1975); *Cook v. State*, 83 Wn.2d 599, 613-17, 521 P.2d 725 (1974) (Utter, J., concurring). We noted long ago that the waiver of sovereign immunity was "unequivocal[ ]" and abolished special procedural roadblocks placed in the way of claimants against the State. *Hunter*, 85 Wn.2d at 818 (striking a 120-day nonclaims statute that effectively operated as a statute of limitations). Simply put, the State may not create procedural barriers to access to the superior courts favorable to it based upon a claim of immunity it has unequivocally waived.

¶20  Article II, section 26 and article IV, section 6 may be harmonized. In order to give effect to both, we hold that the legislature can sculpt the venue, but not the subject matter or original jurisdiction, of the individual superior courts in this State.

## CASH CARDS AND CASH EQUIVALENTS

¶21  We must decide whether the agency erred in concluding that the VIP machine violated these repealed regulations. We sit in much the same position as the trial court, reviewing the agency record directly and showing all due deference to that agency. *Ingram v. Dep't of Licensing*, 162 Wn.2d 514, 521-22, 173 P.3d 259 (2007). As the challenger, ZDI Gaming bears the burden of demonstrating that the agency erred. RCW 34.05.570(1)(a). We conclude it has met that burden.

¶22  ZDI Gaming argues that its cash card is the functional equivalent of cash and that "[d]efining cash to

exclude cash equivalents was an abuse of discretion because cash equivalents are commonly accepted forms of cash." Suppl. Br. of Resp't at 7. One can find several definitions of "cash" in dictionaries: *Black's Law Dictionary* and *The American Edition of the Oxford Dictionary*. AR at 420. *Black's* defines "cash" as "**1.** Money or its equivalent. **2.** Currency or coins, negotiable checks, and balances in bank accounts." BLACK'S, *supra*, at 245. According to the ALJ, "[t]he American Edition of the Oxford Dictionary defines cash as 'money in coins or bills, as distinct from checks or orders.'" AR at 420 (quoting THE OXFORD DICTIONARY AND THESAURUS, AMERICAN EDITION (1996)).

¶23 If a player wins more than $20 on a VIP machine, the machine directs the player to an employee of the establishment to receive cash, food, drink, or merchandise, and a player who stops playing can similarly immediately receive cash or the credits to make purchases from the gaming establishment. While we agree with the State that an extra step is required to convert the cash card to cash, the step is de minimis. Unlike gift certificates, coupons, or rebates, the player does not have to travel or wait to receive cash. Because the cash card can be immediately converted into cash currency at the establishment where the player is playing, the VIP cash card is functionally equivalent to cash.

¶24 ZDI Gaming's request for attorney fees under RAP 18.1 is denied as untimely.

## CONCLUSION

¶25 Despite its invocation of the word "jurisdiction," we find that RCW 9.46.095 is a venue statute and that the courts below properly considered ZDI Gaming's suit. We find that ZDI Gaming has met its burden of showing the Gambling Commission erred in concluding that the VIP

machine violated then-in-force regulations. Accordingly, we affirm.

C. Johnson, Owens, and Stephens, JJ., and Sanders, J. Pro Tem., concur.

¶26 J.M. Johnson, J. (dissenting) — In contrast to the majority's view, the question in this case is whether the Washington State Constitution prohibits the legislature from adopting a statute granting exclusive jurisdiction to Thurston County Superior Court to review appeals of certain decisions of the Washington State Gambling Commission (Commission). RCW 9.46.095 limits the superior court's appellate jurisdiction rather than its original jurisdiction. Additionally, sovereign immunity concerns attach where the state or one of its agencies is named as a party to the suit. I would hold that RCW 9.46.095 does not violate the grant of general jurisdiction to superior courts found in article IV, section 6 of the Washington Constitution, and thus dissent.

¶27 RCW 9.46.095 expressly grants Thurston County Superior Court exclusive jurisdiction to review the decisions of the Commission and provides that "[n]o court of the state of Washington other than the superior court of Thurston county shall have *jurisdiction* over any action or proceeding against the [C]ommission." (Emphasis added.) The Commission denied the application of ZDI Gaming Inc. to distribute its VIP (video interactive display) electronic pull-tab machine. ZDI Gaming filed in Pierce County Superior Court to seek review. I would hold that Pierce County Superior Court lacked subject matter jurisdiction and dismiss the case.

## 1. The History of Gambling in Washington

¶28 I begin my analysis by briefly noting the history of gambling in Washington State. In 1889, our state constitu-

tion originally provided that "[t]he legislature shall never authorize any *lottery* . . . ." WASH. CONST. art. II, § 24 (original text) (emphasis added), *amended by* WASH. CONST. amend. 56. In subsequent cases, we interpreted the term "lottery" broadly to encompass virtually any game involving " 'prize, chance and consideration' " so long as it did not involve " ' *any substantial degree of skill or judgment* . . . .' " *State ex rel. Evans v. Bhd. of Friends*, 41 Wn.2d 133, 150, 247 P.2d 787 (1952) (quoting *State v. Coats*, 158 Or. 122, 132, 74 P.2d 1102 (1938)).

¶29 In 1972, the people of the state of Washington amended the state constitution to remove this broad and absolute prohibition. WASH. CONST. amend. 56. The amended article II, section 24 permitted lotteries, but only where affirmatively approved by a supermajority (i.e., 60 percent) of the legislature. WASH. CONST. art. II, § 24. In light of this new constitutional authority, the legislature enacted the gambling act of 1973, chapter 9.46 RCW. Though the gambling act now authorizes some forms of gaming, it expressly recognizes the potential dangers presented by legalized gambling and requires that all such activities be "closely controlled . . . ." RCW 9.46.010. Within this context, I turn to the issue presented.

*2. Subject Matter Jurisdiction over Claims against the Commission*

¶30 With respect to subject matter jurisdiction, the proper standard of review is de novo. "Whether a court has subject matter jurisdiction is a question of law reviewed de novo." *Dougherty v. Dep't of Labor & Indus.*, 150 Wn.2d 310, 314, 76 P.3d 1183 (2003) (citing *Crosby v. Spokane County*, 137 Wn.2d 296, 301, 971 P.2d 32 (1999)).

¶31 The term "subject matter jurisdiction" refers to the power of a court to hear a case. *Morrison v. Nat'l Austl. Bank Ltd.*, ___ U.S. ___, 130 S. Ct. 2869, 2877, 177 L. Ed. 2d 535 (2010). The subject matter jurisdiction of the superior courts comes from either the Washington Constitution or

the State's legislature. WASH. CONST. art. IV, § 6 (establishing jurisdiction of superior courts and authorizing jurisdiction "as may be prescribed by law"); *see also Residents Opposed to Kittitas Turbines v. State Energy Facility Site Evaluation Council*, 165 Wn.2d 275, 295, 197 P.3d 1153 (2008) (stating that the legislature may confer limited appellate review of administrative decisions to the superior courts); *Dougherty*, 150 Wn.2d at 314 (describing legislation that grants appellate jurisdiction to the superior courts); *Bellingham Bay Improvement Co. v. City of New Whatcom*, 20 Wash. 53, 63, 54 P. 774 (holding that an act conferring appellate review of administrative decisions to the superior courts did not violate the Washington Constitution), *aff'd on reh'g*, 20 Wash. 231, 55 P. 630 (1898). The Washington Constitution distinguishes between two types of subject matter jurisdiction: "original jurisdiction" and "appellate jurisdiction." *See* WASH. CONST. art. IV, § 6. An appeal from an administrative agency invokes a superior court's appellate jurisdiction. *Skinner v. Civil Serv. Comm'n*, 168 Wn.2d 845, 850, 232 P.3d 558 (2010). "Because an appeal from an administrative body invokes the superior court's appellate jurisdiction, 'all statutory requirements must be met before jurisdiction is properly invoked.' " *Id.* (internal quotation marks omitted) (quoting *Fay v. Nw. Airlines, Inc.*, 115 Wn.2d 194, 197, 796 P.2d 412 (1990)).

¶32 In addition to these broad jurisdictional considerations, special sovereign immunity concerns attach where the State or one of its agencies is named as a party to the suit as well. The state constitution provides that "[t]he legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state." WASH. CONST. art. II, § 26. "It may be said without question that an action cannot be maintained against the state without its consent. . . . Since the state, as sovereign, must give the right to sue, it follows that it can prescribe the limitations upon that right." *O'Donoghue v. State*, 66 Wn.2d 787, 789, 405 P.2d 258 (1965). As we said regarding article II, section 26:

"the state being sovereign, its power to control and regulate the right of suit against it is plenary; it may grant the right or refuse it as it chooses, and when it grants it may annex such condition thereto as it deems wise, and no person has power to question or gainsay the conditions annexed."

*State ex rel. Shomaker v. Superior Court*, 193 Wash. 465, 469-70, 76 P.2d 306 (1938) (quoting *State ex rel. Pierce County v. Superior Court*, 86 Wash. 685, 688, 151 P. 108 (1915)). For these reasons, if the State chooses to subject itself to suit exclusively in Thurston County, then "when a suit against the state is commenced in a superior court outside of Thurston [C]ounty, such court does not have jurisdiction of the action." *State ex rel. Thielicke v. Superior Court*, 9 Wn.2d 309, 311-12, 114 P.2d 1001 (1941).

¶33 Thurston County Superior Court possesses exclusive appellate jurisdiction over challenges to the decisions of the Commission. The Washington State gambling act provides:

*No court of the state of Washington other than the superior court of Thurston county shall have jurisdiction* over any action or proceeding against the commission or any member thereof for anything done or omitted to be done in or arising out of the performance of his or her duties under this title: PROVIDED, That an appeal from an adjudicative proceeding involving a final decision of the commission to deny, suspend, or revoke a license shall be governed by chapter 34.05 RCW, the Administrative Procedure Act.

RCW 9.46.095 (emphasis added).[5] ZDI Gaming challenged the Commission's action in Pierce County Superior Court.

---

[5] ZDI Gaming also argues that RCW 9.46.095 provides an exception to the Thurston County jurisdictional requirement for licensing decisions. This argument fails. First, the Commission licenses gaming *businesses*; it does not license gaming *equipment*. *See* WAC 230-14-001 (defining "licensees" as "the business holding the punch board and pull-tab license"); *see also* WAC 230-14-045(1) (defining the requirements for "[a]uthorized pull-tab dispensers"). Second, both the superior court and the Court of Appeals applied the jurisdictional provision and treated it as a venue provision with respect to ZDI Gaming's appeal. The determination of the lower courts also warrants our review of this provision.

Due to the legislature's exclusive grant of jurisdiction to the superior court of Thurston County, the Pierce County Superior Court lacked subject matter jurisdiction over ZDI Gaming's appeal of the Commission's decision. "When a court lacks subject matter jurisdiction, dismissal is the only permissible action the court may take." *Shoop v. Kittitas County*, 149 Wn.2d 29, 35, 65 P.3d 1194 (2003). Because the court lacked jurisdiction, dismissal is the appropriate remedy.

¶34 The Court of Appeals reached the opposite conclusion. It incorrectly rewrote the legislature's term "jurisdiction" in RCW 9.46.095 to read "venue." *ZDI Gaming, Inc. v. Wash. State Gambling Comm'n*, 151 Wn. App. 788, 801, 214 P.3d 938 (2009). In arriving at this conclusion, the Court of Appeals relied heavily on this court's decisions in *Dougherty* and *Shoop*. *Id*. at 801-03. The Court of Appeals interpreted *Shoop* to preclude " 'any subject matter [jurisdiction] restrictions as among superior courts' " under article IV, section 6 of the Washington Constitution. *Id*. at 803 (alteration in original) (quoting *Shoop*, 149 Wn.2d at 37). Based on this principle, the court concluded that a "constitutional reading" of RCW 9.46.095 "suggests that the statute was intended to govern venue . . . ." *Id*. at 804.

¶35 The Court of Appeals misapplied the case law. In *Dougherty*, we held that the filing requirements of a different statute, RCW 51.52.110, referred to venue and not to subject matter jurisdiction. *Dougherty*, 150 Wn.2d at 320. Dougherty was an injured worker who filed an industrial insurance claim for worker's compensation. *Id*. at 313. The Department of Labor and Industries (Department) denied the claim. *Id*. The statute[6] at issue in *Dougherty* directed the claimant to file his appeal in his county of residence, the

---

[6] The text of the statute at issue in *Dougherty* reads as follows:

"In cases involving injured workers, an appeal to the superior court shall be to the superior court of the county of residence of the worker or beneficiary, as shown by the [Department's] records, or to the superior court of the county wherein the injury occurred or where neither the county of residence nor the

county where the injury occurred, or Thurston County. *Id.* at 315. Dougherty appealed the Department's decision to Skagit County Superior Court, but he did not live in Skagit County, and the injury did not occur in Skagit County. *Id.* at 313. The superior court granted the Department's motion to dismiss, and the Court of Appeals affirmed, holding that Skagit County Superior Court lacked subject matter jurisdiction. *Id.* at 313-14. We reversed the Court of Appeals, holding that RCW 51.52.110 referred to venue and that Skagit County Superior Court did not lack subject matter jurisdiction over Dougherty's appeal. *Id.* at 320.

¶36 The statute at issue in *Dougherty* did not use either the term "jurisdiction" or "venue." *Id.* at 315. After engaging in a conceptual analysis of the doctrines of jurisdiction and venue, we announced a general canon of statutory interpretation that "[u]*nless mandated by the clear language of the statute,* we generally decline to interpret a statute's procedural requirements regarding location of filing as jurisdictional." *Id.* at 317 (emphasis added). In the case at bar, the statute is very different. The statute expressly reserves all "jurisdiction" over actions against the Commission to Thurston County Superior Court. RCW 9.46.095 ("No court of the state of Washington other than the superior court of Thurston county shall have *jurisdiction* over any action or proceeding against the commission . . . ." (emphasis added)). Because the clear language of the statute addresses jurisdiction, the interpretive canon announced in *Dougherty* does not apply.

¶37 Only a few months prior to the decision in *Dougherty*, we decided *Shoop.* In *Shoop*, we held that the requirements of the statute there at issue, former RCW 36.01.050 (1997),[7]

county wherein the injury occurred are in the state of Washington then the appeal may be directed to the superior court for Thurston county."

*Dougherty,* 150 Wn.2d at 315 (quoting RCW 51.52.110).

[7] The text of the statute at issue in *Shoop* reads as follows:

"(1) All actions against any county may be commenced in the superior court of such county, or in the superior court of either of the two nearest counties . . . .

related only to venue and not to subject matter jurisdiction. *Shoop*, 149 Wn.2d at 37. Shoop brought a personal injury claim against several unnamed defendants and Kittitas County. *Id*. at 32. The statute at issue in *Shoop* directed the plaintiff to commence her action against Kittitas County in either Kittitas County or one of the two nearest counties. *Id*. at 35. The two nearest counties were Yakima County and Grant County. *Id*. at 32. Shoop brought her suit in King County. *Id*. Kittitas County moved to dismiss for lack of subject matter jurisdiction. *Id*. The superior court granted the motion and the Court of Appeals reversed. *Id*. at 32-33. We affirmed the Court of Appeals, holding that the requirements of former RCW 36.01.050 (1997) relate to venue rather than subject matter jurisdiction. *Id*. at 37-38.

¶38 The primary issue in *Shoop* was our previous holding in *Cossel v. Skagit County*, 119 Wn.2d 434, 834 P.2d 609 (1992), *overruled by Shoop*, 149 Wn.2d 29. In *Cossel*, we held that a predecessor statute, former RCW 36.01.050 (1963), restricted the subject matter jurisdiction of the superior courts. *Shoop*, 149 Wn.2d at 34. In Shoop's case, the Court of Appeals distinguished *Cossel* on grounds that the 1997 legislative amendments transformed former RCW 36.01.050 (1997) into a venue statute rather than a jurisdictional statute. *Id*. at 35. We disagreed with the Court of Appeals' conclusion that the 1997 legislative amendments transformed the statute. *Id*. at 36-37. Nonetheless, we affirmed the Court of Appeals. *Id*. at 37. Though *Cossel*'s jurisdictional reading of former RCW 36.01.050 (1997) still controlled, such a reading would violate article IV, section 6 of the Washington Constitution. *Id*. To avoid this constitutional problem, we overruled *Cossel* and construed the statute as a restriction on venue

---

"(2) The determination of the nearest counties is measured by the travel time between county seats using major surface routes, as determined by the office of the administrator for the courts."

*Shoop*, 149 Wn.2d at 35 (alteration in original) (quoting former RCW 36.01.050 (1997)).

rather than jurisdiction. *Id.* In short, *Shoop* overruled *Cossel*, determined that a jurisdictional reading of former RCW 36.01.050 (1997) violated the state constitution, and, for that reason, construed the statute as a restriction on venue rather than a limit on subject matter jurisdiction. *Id.*

¶39 This case does not raise the constitutional issues at stake in *Shoop. Shoop* involved constitutional original jurisdiction of a superior court. *Id.* at 32. So long as the amount in controversy surpasses the jurisdictional threshold, a superior court's original jurisdiction comes directly from the state constitution. WASH. CONST. art. IV, § 6 ("The superior court shall have original jurisdiction in all cases at law . . . and in all other cases in which the demand or the value of the property in controversy amounts to three thousand dollars or as otherwise determined by law . . . ."). While the legislature can restrict the superior court's jurisdiction by changing the amount-in-controversy requirement or abolishing the substantive law for a particular type of common law tort claim (*see Dougherty*, 150 Wn.2d at 314), the legislature cannot otherwise restrict the type of tort controversy that a superior court may adjudicate.[8]

¶40 In contrast to *Shoop*, the present case involves legislatively created appellate jurisdiction of a superior court to review an administrative agency decision. Appellate jurisdiction over administrative decisions is a creature of statute. *Residents Opposed to Kittitas Turbines*, 165 Wn.2d at 295. "This court has consistently held that a right of direct review in superior court of an administrative decision invokes the limited appellate jurisdiction of the court." *Id.* at 294. The state constitution does not expressly provide for this type of appellate jurisdiction; however, "[a]llowing only limited ap-

---

[8] *See* 1 Wilfred J. Airey, A History of the Constitution and Government of Washington Territory 466 (June 5, 1945) (unpublished PhD dissertation, University of Washington) (on file with Washington State Law Library) (stating that the Constitutional Convention of 1889 fixed the jurisdiction of the Washington courts and that "[t]he superior courts were always to be open and to have original jurisdiction in practically all types of criminal, civil, and probate cases if the amount in civil actions exceeded $100").

pellate review over administrative decisions, rather than original or appellate jurisdiction as a matter of right, 'serves an important policy purpose in protecting the integrity of administrative decisionmaking.' " *Id.* at 295 (quoting *King County v. Wash. State Boundary Review Bd.*, 122 Wn.2d 648, 668, 860 P.2d 1024 (1993)). "The legislature may confer such limited appellate review by statute." *Id.*

¶41 With respect to the Commission, the legislature clearly determined that Thurston County Superior Court possesses exclusive jurisdiction. Thus, Pierce County Superior Court lacked subject matter jurisdiction. *Shoop* has defined the remedy: "When a court lacks subject matter jurisdiction, dismissal is the only permissible action the court may take." 149 Wn.2d at 35.

CONCLUSION

¶42 I would hold that, under RCW 9.46.095 as written by the legislature, the Thurston County Superior Court possesses exclusive subject matter jurisdiction to review commission orders. Because the Pierce County Superior Court lacked subject matter jurisdiction, I would dismiss the case.

MADSEN, C.J.; FAIRHURST, J.; and ALEXANDER, J. PRO TEM., concur with J.M. JOHNSON, J.

After modification, further reconsideration denied March 21, 2012.