# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JAY GEROW, an individual and ZDI GAMING, INC., a Washington corporation,<br><br>Appellants,<br><br>v.<br><br>STATE OF WASHINGTON, by and through the WASHINGTON STATE GAMBLING COMMISSION, AND THE Governor's Office of Christine Gregoire; Rick Day, individually and in his official capacity as Director of the Washington State Gambling Commission; John Ellis, individually and in his official capacity as a Gambling Commissioner; Janice Niemi, individually and in her former official capacity as a Gambling Commissioner; Peggy Ann Bierbaum, individually and in her official capacity as a Gambling Commissioner; Kevin Rojecki, individually and in his official capacity as a Gambling Commissioner; and Margarita Prentice, individually and in her official capacity as a Gambling Commissioner,<br><br>Respondents. | No. 47983-4-II<br><br><br><br>UNPUBLISHED OPINION |

MAXA, A.C.J. – Jay Gerow and his gambling equipment company ZDI Gaming, Inc.

(collectively "Gerow") appeal the dismissal of his claims against the Washington State Gambling

Commission, Gambling Commission director Rick Day in his individual and official capacities,

the five Gambling Commission commissioners in their individual and official capacities, and Governor Christine Gregoire (collectively "the State").

Gerow's claims arose from the Gambling Commission's denial of his application to use a cash card feature on the electronic pull-tab machine that he marketed and the Gambling Commission's subsequent changes to gambling regulations designed to prevent use of the cash card feature. He asserted claims for, among others, violation of 42 U.S.C. § 1983, negligence, and tortious interference with a contract or business expectancy. The trial court dismissed all of Gerow's claims under CR 12(c) and on summary judgment.

We hold that the trial court properly dismissed Gerow's claims because (1) regarding the § 1983 claims, (a) collateral estoppel based on Gerow's prior federal lawsuit prevented him from contesting that the individual defendants had legislative immunity from claims regarding 2008 amendments to gambling regulations, (b) res judicata based on the prior federal lawsuit barred all claims relating to the State defendants' actions before Gerow filed the federal lawsuit, and (c) Gerow did not present sufficient evidence or argument to avoid summary judgment on any remaining claims; (2) RCW 9.46.095 provided immunity to the Gambling Commission and individual commissioners on Gerow's tort claims; (3) the trial court did not err in dismissing all tort claims against Governor Gregoire; (4) under the public duty doctrine, the Gambling Commission director did not owe Gerow a duty of care; and (5) Gerow did not establish a valid business expectancy to support his tortious interference with a contract claim.

Accordingly we affirm the trial court's dismissal of Gerow's claims against all defendants.

FACTS

*Gerow's Electronic Pull-Tab Machine*

Gerow manufactured and marketed a VIP (video interactive play) electronic pull-tab machine featuring a video display screen and a currency bill acceptor housed in a decorative cabinet. The VIP machine simulated the sounds and displays of a video slot machine, but only issued paper pull-tabs. The machine required a player to purchase the pull-tab with currency and required that players redeem all winning pull tabs with a cashier. The Gambling Commission approved this version of the VIP machine in 2002.

Gerow sought to upgrade his VIP machine by adding a cash card acceptor that would allow a player to purchase pull-tabs with a prepaid cash card instead of currency. The upgraded VIP machine also would automatically credit pull-tab winnings of $20 or less back to the cash card. A player who stopped playing the VIP machine with a balance on the card could use it to purchase food, drink, or merchandise, or redeem it for cash at the establishment featuring the VIP machine.

*Denial of Approval and Litigation*

In 2005, Gerow filed an application with the Gambling Commission seeking approval to market the upgraded VIP machine with the cash card acceptor. The Gambling Commission denied his application. Gerow filed a petition for declaratory relief with the Gambling Commission. An administrative law judge (ALJ) found that the upgraded VIP machine's use of a cash card to initiate gaming and as a way to collect small prizes would violate two regulations: one prohibiting gambling without prepayment by cash, check, or electronic bank transfer and another requiring that all prizes be in either cash or merchandise. The Gambling Commission

issued a final declaratory order upholding the ALJ's decision that the upgraded VIP machine violated gambling regulations.

Gerow appealed that decision to superior court. In 2007, the superior court reversed the Gambling Commission's decision and held that the upgraded VIP complied with existing regulations because a cash card was equivalent to cash. The superior court ruled that the Gambling Commission's denial of Gerow's application was arbitrary and capricious and remanded the matter to the Gambling Commission for action consistent with the superior court's order and findings. The Gambling Commission appealed and obtained a stay of the superior court's ruling pending the appeal.

In 2009, this court affirmed the superior court's ruling that the cash card feature did not violate regulations existing at the time of the application. *ZDI Gaming, Inc. v. Wash. State Gambling Comm'n*, 151 Wn. App. 788, 809-10, 214 P.3d 938 (2009). In 2012, the Supreme Court affirmed and held that the upgraded VIP machine with cash card feature did not violate gambling regulations existing at the time of the application. *ZDI Gaming, Inc. v. Wash. State Gambling Comm'n*, 173 Wn.2d 608, 621-23, 268 P.3d 929 (2012).

*2008 Gambling Regulations and Litigation*

In response to the superior court's ruling that the upgraded VIP machine did not violate gambling regulations, the Gambling Commission considered various rule changes. In January 2008, the Gambling Commission ultimately adopted two new regulations (collectively, 2008 regulations).[1] First, it adopted former WAC 230–14–047 (2008), a regulation outlining the

---

[1] For a procedural history of the Gambling Commission's regulations, see *Gerow v. Wash. State Gambling Comm'n*, 181 Wn. App. 229, 233-36, 324 P.3d 800 (2014).

features that were permitted in electronic pull-tab machines. This regulation allowed the use of cash cards to purchase pull tabs but not to receive a credit for winnings.[2] Second, it adopted WAC 230–06–003, a regulation that defined "cash" as currency and as not including electronic representations of money or methods of payment.

In February 2008, Gerow filed a lawsuit in superior court challenging the 2008 regulations under the Administrative Procedure Act (APA). *See Gerow v. Wash. State Gambling Comm'n*, 181 Wn. App. 229, 236, 324 P.3d 800 (2014). In 2012, the superior court ruled that the Gambling Commission properly adopted the 2008 regulations and that they were not arbitrary and capricious. Gerow appealed. In 2014, this court ruled that the 2008 regulations were invalid because they were not adopted by a three commissioner majority as required by RCW 9.46.050(2). *Id.* at 244-45.

*Federal Court Lawsuit*

In addition to challenging the 2008 regulations under the APA in state court, in February 2008 Gerow filed a complaint in federal court against the State and the Gambling Commission director and commissioners. The federal court complaint alleged that the Gambling Commission and its representatives violated 42 U.S.C. § 1983 by adopting the 2008 regulations and taking other actions in retaliation for Gerow's successful appeal of the commission's denial of his application for the VIP upgrade. He also asserted claims for negligence, tortious interference with a contract or business expectancy, and violation of the Washington Constitution.

---

[2] WAC 230–14–047 was amended in 2014 and now allows electronic video pull-tab dispensers that accept cash cards to automatically credit pull-tab winnings of $20 or less back to the cash card. WAC 230–14–047(4).

The State moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). In October, the federal district court dismissed Gerow's § 1983 claim. The court ruled that the Gambling Commission director and commissioners were entitled to legislative immunity for their quasi-legislative rulemaking actions. The court did not reach the merits of the remaining state law claims and ultimately dismissed those claims without prejudice on jurisdictional grounds.

In June 2010, the Ninth Circuit Court of Appeals affirmed. The court held that the district court correctly applied the test for legislative immunity and did not err in finding that the Gambling Commission director and commissioners were entitled to legislative immunity.

*Current Lawsuit*

In October 2008, after the dismissal of his federal lawsuit, Gerow filed this lawsuit in superior court asserting multiple claims against the Gambling Commission, the Gambling Commission director and commissioners, and Governor Gregoire.

Gerow filed an amended complaint in May 2012. He asserted claims for a violation of 42 U.S.C. § 1983 against the director and commissioners and claims for negligence and tortious interference with a contract or business expectancy against all defendants for their part in denying use of the upgraded VIP machine and adopting the 2008 regulations aimed at keeping the upgraded VIP machine off the market.[3]

---

[3] The complaint asserts several additional claims not at issue in this appeal – outrage, violations of the Washington Constitution, wrongful retaliation in violation of public policy, defamation/false light, violations of the open public meetings act, and declaratory/injunctive relief.

*Dismissal and Summary Judgment*

In October 2012, the State filed a CR 12(c) motion for dismissal on the pleadings seeking to dismiss all tort claims against the Gambling Commission and individual commissioners on the grounds that they were immune from suit under RCW 9.46.095. The trial court granted the State's motion and dismissed the negligence and tortious interference claims against the Gambling Commission and its commissioners.

In May 2013, the State filed a summary judgment motion on all remaining claims against all remaining defendants. The trial court granted summary judgment in part, dismissing Gerow's § 1983 claims against the individual defendants and the negligence claims against the Gambling Commission director and the governor. The trial court granted Gerow's CR 56(f) motion to continue the state's motion regarding the tortious interference claim against the Gambling Commission director and the governor, allowing him more time to conduct discovery on that claim.

In June 2015, the State filed a summary judgment motion on Gerow's only remaining cause of action – the tortious interference claim. The trial court granted summary judgment and dismissed Gerow's tortious interference claim against the Gambling Commission director and the governor. At that point all of Gerow's claims against all defendants had been dismissed.

Gerow appeals the trial court's CR 12(c) and summary judgment rulings.

ANALYSIS

A.    STANDARD OF REVIEW

We review a dismissal under CR 12(c) de novo. *Ent v. Wash. State Criminal Justice Training Comm'n*, 174 Wn. App. 615, 621, 301 P.3d 468 (2013). A dismissal under CR 12(c) is

appropriate only if the plaintiff cannot prove any set of facts that would justify recovery. *Id.* at 622. On review, we presume that the allegations in the plaintiff's complaint are true and we may also take as true hypothetical facts offered by the plaintiff. *Id.*

We review a trial court's order granting summary judgment de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We review the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Keck*, 184 Wn.2d at 370. "An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Keck*, 184 Wn.2d at 370. If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment. *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 865, 324 P.3d 763 (2014).

When seeking summary judgment, the initial burden is on the moving party to show there is no genuine issue of material fact. *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 169, 273 P.3d 965 (2012). Once the moving party has made such a showing, the burden is on the nonmoving party to set forth specific facts that rebut the moving party's contentions and indicate a genuine issue of material fact. *Id.* But conclusory statements and speculation submitted by the nonmoving party will not preclude summary judgment. *Id.*

B.      42 U.S.C. § 1983 CLAIMS

Gerow argues that the trial court erred in granting summary judgment in favor of the State on his 42 U.S.C. § 1983 claims against the Gambling Commission director and commissioners, which were premised on alleged violations of his free speech and due process

rights.[4] We hold that the trial court properly dismissed Gerow's § 1983 claims because (1) collateral estoppel applied to establish legislative immunity for Gerow's § 1983 claims against the Gambling Commission director and commissioners, (2) res judicata applied to bar all § 1983 claims based on any Gambling Commission actions before Gerow filed the federal lawsuit in 2008 because those claims were or could have been asserted in that lawsuit, and (3) Gerow did not create genuine issues of material fact for his § 1983 claims regarding other alleged actions.

    1.    Legal Principles

42 U.S.C. § 1983 seeks to protect citizens who have been deprived of their constitutional rights by someone acting under the color of state law. That statute states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

A plaintiff may not bring suit under § 1983 in state court against the State or against a state official acting in an official capacity because a state is not a person subject to suit within the meaning of § 1983. *Wash. State Republican Party v. Pub. Disclosure Comm'n*, 141 Wn.2d 245, 285-86, 4 P.3d 808 (2000). Similarly, state agencies are not subject to § 1983 actions. *Hontz v. State*, 105 Wn.2d 302, 309, 714 P.2d 1176 (1986). But a plaintiff may assert § 1983 claims

---

[4] Which defendants Gerow asserted the § 1983 claims against is somewhat unclear. The amended complaint focuses the § 1983 claims on the Gambling Commission director and commissioners. Gerow also states in his briefing that the governor is liable for § 1983 violations, but he cites no evidence or authority supporting this statement. Therefore, to the extent Gerow claims that the governor is liable under § 1983, we do not address that claim.

against government officials in their *individual* capacities for actions taken under color of state law. *Republican Party*, 141 Wn.2d at 286.

 2. Collateral Estoppel – Legislative Immunity

The State argues that collateral estoppel applies to Gerow's § 1983 claims because the federal district court ruled that legislative immunity applied to Gerow's § 1983 claims, which are identical to his current claims. We hold that collateral estoppel barred Gerow's current § 1983 claims against the Gambling Commission director and commissioners to the extent that they concerned the adoption of the 2008 regulations, but not to the extent that the claims related to other alleged actions.

Collateral estoppel, also called issue preclusion, bars relitigation of a specific issue decided in one action in a subsequent action involving the same parties. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). To prevail on a collateral estoppel argument, the party seeking application of the doctrine bears the burden of showing that (1) the issue decided in the prior action was identical to the one presented in the second action, (2) the prior action ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to or in privity with a party to the earlier action, and (4) application of collateral estoppel will not work an injustice on the estopped party. *Dot Foods, Inc. v. Dep't of Rev.*, 185 Wn.2d 239, 254, 372 P.3d 747 (2016). We review de novo whether collateral estoppel applies. *Christensen*, 152 Wn.2d at 305.

Regarding the first requirement, collateral estoppel "may be applied to preclude only those issues that have actually been litigated and necessarily and finally determined in the earlier proceeding." *Id.* at 307. Here, the issue decided in the federal action was whether the Gambling

10

Commission director and commissioners had legislative immunity regarding the adoption of the 2008 regulations. That issue was identical to one of the issues in the current case.

The second and third elements also were clearly satisfied. The federal court entered a judgment on the merits, and Gerow was a party in the federal action. Regarding the fourth requirement, the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Id.* Applying collateral estoppel would not work an injustice on Gerow because he had an opportunity to fully present the issue both in federal district court and in the Ninth Circuit.

The State seems to suggest that collateral estoppel also would bar all § 1983 claims regarding the Gambling Commission's refusal to approve Gerow's upgraded VIP machine. But the federal court addressed only the claim that adoption of the 2008 regulations violated § 1983 and decided that claim based on legislative immunity. The federal court did not address any other claims, and therefore collateral estoppel did not apply to other claims.

We hold that collateral estoppel applies to the issue of whether the Gambling Commission director and commissioners have legislative immunity regarding the adoption of the 2008 regulations.

3. Res Judicata

The State argues that res judicata applied to Gerow's § 1983 claims because the federal court claims were identical to the current claims. We hold that res judicata applied to bar all § 1983 claims regarding any actions that occurred before Gerow filed the federal lawsuit because those claims were or could have been asserted in that lawsuit, but did not bar claims regarding later conduct.

Res judicata, also called claim preclusion, applies when a plaintiff's claim against a party has been determined by final judgment in one action and the plaintiff asserts the same claim against the same party in a subsequent action. *Emeson v. Dep't of Corr.*, 194 Wn. App. 617, 626, 376 P.3d 430 (2016). Res judicata applies both to matters that were actually litigated in the first action and those that could have been raised and with reasonable diligence should have been raised in the first action. *Id.* In other words, res judicata applies when a previous claim for which there was a final judgment on the merits and the current claim are so similar that the current claim should have been litigated in the former action. *Storti v. Univ. of Wash.*, 181 Wn.2d 28, 40, 330 P.3d 159 (2014).

The threshold requirement of res judicata is a final judgment on the merits in the first action. *Emeson*, 194 Wn. App. at 626. We then must consider whether the claims in the two actions involve substantially the same evidence and the same transactional nucleus of facts. *Storti*, 181 Wn.2d at 40. Res judicata applies when the first and second actions involve the same (1) subject matter, (2) cause of action, (3) persons or parties, and (4) quality of persons for or against whom the decision is made. *Williams v. Leone & Keeble, Inc.*, 171 Wn.2d 726, 730, 254 P.3d 818 (2011). We review de novo whether res judicata applies. *Emeson*, 194 Wn. App. at 626.

Here, the threshold requirement of a final judgment on the merits in the first action was satisfied. A grant of summary judgment is a final judgment on the merits. *Id.* In addition, requirements two, three, and four clearly were satisfied. Regarding requirement two, both the federal action and the current action asserted a cause of action for 42 U.S.C. § 1983 violations.

Regarding requirements three and four, Gerow and ZDI Gaming were plaintiffs and the Gambling Commission director and commissioners were defendants in both actions.

At issue here is the first requirement – whether the current action involved the same subject matter as the federal action. Comparing the federal court complaint with the complaint in the current action indicates that the subject matter of the two actions is the same. The facts alleged in both complaints are substantially similar. Both complaints provide details and allegations regarding the Gambling Commission's denial of approval of Gerow's upgraded VIP machine, the new 2008 regulations, and enforcement actions against Gerow.

Although Gerow does not expressly address res judicata, he seems to assert three arguments. First, he claims that the federal case "was understood to be a limited challenge to the newly adopted rules prohibiting ZDI's upgrade." Br. of Appellant at 17. He argues that the federal court addressed only the 2008 regulations, not enforcement activities. But as noted, Gerow's federal complaint included extensive allegations not related to the 2008 regulations, including acts surrounding the denial of the upgraded VIP machine. The federal court's summary judgment order interpreted Gerow's complaint as only pertaining to rulemaking and summarily dismissed his § 1983 claim based on legislative immunity for adopting the 2008 regulations. But the limited scope of the order does not mean that the other allegations were at issue in federal court. If Gerow believed that the federal court erred in dismissing claims not related to the 2008 regulations, his remedy was to file an appeal in that action.

Second, Gerow argues that he did not have the ability to assert the same arguments in the federal action that he could now because this court and the Supreme Court had not yet ruled on his challenge to the Gambling Commission's denial of his upgraded VIP machine. Therefore, he

asserts that his claims for erroneous enforcement and retaliatory misconduct were not yet ripe when he filed the federal lawsuit. However, before Gerow filed the federal lawsuit the superior court had ruled that the Gambling Commission's denial of Gerow's application was arbitrary and capricious. As a result, Gerow could have asserted and did assert claims in federal court regarding the Gambling Commission's conduct other than adopting the 2008 regulations.

Third, Gerow argues that the federal court could not have considered the defendant's actions that occurred after 2008 that are included in the amended complaint in the current action. We agree with this argument. Res judicata will not operate if a necessary fact was not in existence at the time of the prior proceeding. *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. 320, 331, 941 P.2d 1108 (1997). Allegations regarding facts that have not yet occurred at the time of the first action necessarily cannot constitute the same subject matter as the first action for res judicata purposes.

Accordingly, we hold that Gerow's § 1983 claims were barred by res judicata to the extent that they related to the Gambling Commission's actions before Gerow filed his federal court lawsuit in 2008, but not for any alleged actions that occurred after that date.

4.    Merits of Post-Federal Lawsuit § 1983 Claims

Gerow argues that the trial court erred in granting summary judgment in favor of the Gambling Commission director and commissioners on his § 1983 claims relating to actions after he filed the federal lawsuit. The State argues that to the extent collateral estoppel or res judicata do not bar Gerow's § 1983 claims, the claims fail because they are unsupported by evidence. We agree with the State.

14

a.    First Amendment Violation

Gerow argues that the Gambling Commission director and commissioners violated his right to free speech under the First Amendment to the United States Constitution by taking retaliatory actions against him for challenging their denial of his application for the upgraded VIP machine.

Courts have recognized that a person has a protected interest in commenting on the actions of government officials and that a state response designed to retaliate against and chill political expression strikes at the heart of the First Amendment. *CarePartners LLC v. Lashway*, 545 F.3d 867, 877 (9th Cir. 2008). But in order to assert a claim for retaliation based on the exercise of free speech rights, the plaintiff must show that retaliation based on the protected conduct was a *substantial* or *motivating* factor behind the defendant's actions. *Id.*

In meeting the burden to show that the protected conduct was a substantial or motivating factor, the plaintiff cannot rely on speculation or conclusory statements. *See Elcon*, 174 Wn.2d at 169 (stating general summary judgment rule). "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

Here, Gerow argues that after he prevailed in his appeal of the Gambling Commission's initial denial of the upgraded VIP machine, the Gambling Commission director and commission

imposed arbitrary restraints to stop approval of his upgraded VIP, and the director and at least one commissioner were openly hostile toward him.[5]

But Gerow failed to produce sufficient competent evidence to create a genuine issue of material fact about the defendants' motivations. Gerow provided evidence showing that in 2007 his lab fees were doubled and in 2008 he was audited by commission staff. He also provided his own declaration in which he states that the director and a commissioner were hostile toward him and did not communicate with him. In support, he provided meeting minutes from a 2007 commission meeting in which a commissioner expresses her displeasure about being included in Gerow's lawsuit.

Gerow's evidence is insufficient for several reasons. First, his evidence comes from 2007 and 2008, and as discussed above, res judicata bars claims based on actions occurring before Gerow filed his federal suit.

Second, Gerow presented no evidence that he was being singled out or targeted by the lab fee increase or audit. The letter the Gambling Commission sent to Gerow indicated that the fee increase was implemented in December 2006, and the increase seemed to apply to all similar submissions, not just Gerow's.

Third, Gerow does not present any evidence showing that the motive behind the fee increase, audit, or hostility was retaliation for Gerow's appeal. Gerow relies merely on the fact that the events occurred after his successful appeal. But in this case, the timing of events is not

---

[5] Gerow also argues that the director and commission retaliated by contemplating a ban on all electronic pull-tabs and passing the 2008 regulations. But as discussed above, those claims are barred by collateral estoppel.

enough to create a genuine issue of material fact and Gerow offers no other evidence indicating that the defendants had unlawful motives. *See CarePartners LLC v. Lashway*, 428 Fed. Appx. 734, 735 (9th Cir. 2011). He does not support his claim with any actual evidence showing the defendants' intentions. He provides only speculation to show that there were unlawful retaliatory motives behind the defendants' actions.[6]

Accordingly, we hold that the trial court did not err in granting summary judgment in favor of the Gambling Commission director and commissioners on Gerow's § 1983 claims for actions after filing of the federal lawsuit because Gerow failed to create a genuine issue of material fact that they violated his First Amendment rights.

      b.    Due Process Violation

Gerow argues that the Gambling Commission director and commissioners violated his due process rights through irrational and arbitrary enforcement activity. The State argues that Gerow received due process in his APA challenge of the Gambling Commission's denial of his application. We decline to address Gerow's argument.

Gerow asserts that the Gambling Commission and director violated his due process rights by doubling his lab fees, delaying review of the upgraded VIP, authorizing audits of Gerow, and sending threatening letters to Gerow's customers. He also claims that Gambling Commission

---

[6] Further, even Gerow's speculation fails to support his argument because he claims that the Gambling Commission and director continued to impose obstacles to the upgraded VIP machine's approval not to retaliate for Gerow's successful APA appeal, but instead to give tribes a market advantage. He states that the Gambling Commission and director were motivated by an interest in obtaining a revenue sharing compact with a tribe. Such a motive would negate the suggestion that the Gambling Commission and director were motivated by retaliation.

representatives were openly hostile to him and restricted his participation in Gambling Commission meetings.

But Gerow does not explain how this conduct, even if it occurred, violated his due process rights. And he cites no authority to support his claim. We need not address an argument if the appellant cites no supporting authority. *See* RAP 10.3(a)(6) (appellate brief should contain argument in support of issues presented for review, together with citations to legal authority); *see also Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2014) ("We do not consider conclusory arguments that are unsupported by citation to authority."). Therefore, we do not address Gerow's due process argument.

C.     NEGLIGENCE AND TORTIOUS INTERFERENCE CLAIMS

Gerow argues that the trial court erred in dismissing his negligence and tortious interference with a contract or business expectancy claims against the Gambling Commission and individual commissioners based on immunity under RCW 9.46.095. He also argues that the trial court erred in granting summary judgment in favor of the Gambling Commission director and governor on the tort claims. We disagree.

1.     Statutory Immunity for Gambling Commission and Commissioners

RCW 9.46.095 provides that the Gambling Commission and its members shall not be personally liable in any action for damages.[7] Gerow argues that RCW 9.46.095 does not provide immunity from liability, but instead is an indemnification provision. We disagree.

---

[7] Statutory immunity created by state law cannot apply to § 1983 claims created by federal law. *Martinez v. California*, 444 U.S. 277, 284 n.8, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1980); *Monroe v. City of Lawrence*, 124 F. Supp. 3d 1097, 1128 (D. Kan. 2015).

a.    Principles of Statutory Interpretation

Statutory interpretation is a matter of law that we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Id.* at 762. To determine legislative intent, we first look to the plain language of the statute. *Id.* We consider the language of the provision in question, the context of the statute in which the provision is found, and related statutes. *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015).

To discern the plain meaning of undefined statutory language, we give words their usual and ordinary meaning and interpret them in the context of the statute in which they appear. *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 395, 325 P.3d 904 (2014). And "[r]elated statutory provisions must be harmonized to effectuate a consistent statutory scheme that maintains the integrity of the respective statute." *Koenig v. City of Des Moines*, 158 Wn.2d 173, 184, 142 P.3d 162 (2006).

If a statute is unambiguous, we apply the statute's plain meaning as an expression of legislative intent without considering other sources of such intent. *Jametsky*, 179 Wn.2d at 762. If the plain language of the statute is susceptible to more than one reasonable interpretation, the statute is ambiguous. *Id.* We resolve ambiguity by considering other indications of legislative intent, including principles of statutory construction, legislative history, and relevant case law. *Id.*

  b. Analysis

RCW 9.46.095, which is entitled "Gambling commission – Proceedings against,

jurisdiction – Immunity from liability," provides in relevant part:

> Neither the commission nor any member or members thereof *shall be personally*
> *liable in any action at law for damages* sustained by any person because of any acts
> performed or done, or omitted to be done, by the commission or any member of the
> commission, or any employee of the commission, in the performance of his or her
> duties and in the administration of this title.

(Emphasis added.)

First, Gerow argues that RCW 9.46.095 should not be interpreted as providing immunity

because the legislature uses clearer language when it intends to grant immunity. In support of

this argument, Gerow cites RCW 4.24.510 ("[I]s immune from civil liability for claims based

upon the communication to the agency . . . ."), RCW 18.64.005(9) ("Be immune, collectively

and individually, from suit in any action, civil or criminal . . . ."), RCW 18.89.080 ("[A]re

immune from suit in any civil action . . . ."), and RCW 26.44.060(5) ("[S]hall not be subject to

civil liability arising out of his or her cooperation.").

Gerow is correct that RCW 9.46.095 does not use the word "immunity." But the statute's

plain language states that the Gambling Commission and its members cannot "be personally

liable in any action at law for damages." RCW 9.46.095. Gerow is suing the Gambling

Commission and its commissioners for damages at law. Therefore, RCW 9.46.095 plainly states

that they cannot be personally liable.[8]

---

[8] The caption of RCW 9.46.095 also clearly suggests that it provides immunity for the Gambling
Commission and its members. However, a statute's caption is prepared by the code reviser and
is not part of the statute. *State v. T.A.W.*, 144 Wn. App. 22, 26, 186 P.3d 1076 (2008); *see* RCW
1.08.015(2)(*l*). The actual title of the act, when part of a legislative enactment, may be

Second, Gerow argues that RCW 9.46.095 applies only to suits against Gambling Commission commissioners in their personal capacities, not in their official capacities. He focuses on the word "personally," arguing that RCW 9.46.095 simply assures that the State and not the commissioners themselves must pay any damages caused by their misconduct. He claims that RCW 9.46.095 really is an indemnification provision that protects commissioners against personal exposure to damages.

However, RCW 9.46.095 addresses liability, not payment. The statute states that the Gambling Commission and its members are not liable for damages. It does not provide that the State will pay any damages if liability is established. And the term "personally" cannot refer only to the commissioners' personal exposure because the statute also applies the term to the Gambling Commission itself. The Gambling Commission has no "personal" capacity.

Further, if RCW 9.46.095 is interpreted simply as an indemnification provision, it becomes a useless statute. RCW 4.92.075 and RCW 4.24.490 already provide indemnity to state officers and employees. We will not interpret a statute in a way that renders it meaningless. *See Newton v. State*, 192 Wn. App. 931, 938, 369 P.3d 511, *review denied*, 186 Wn.2d 1003 (2016).

We hold that RCW 9.46.095 provides immunity to the Gambling Commission and its commissioners from damages actions at law for acts in the performance of their duties. Gerow's tort claims are actions at law for damages based on the performance of their official duties. Accordingly, we hold that the trial court did not err in dismissing Gerow's negligence and

---

considered as a source of legislative intent, *T.A.W.*, 144 Wn. App. at 26, but the title of the act adopting the section that became RCW 9.46.095 does not describe the section.

tortious interference claims against the Gambling Commission and its commissioners based on immunity under RCW 9.46.095.

   2.   Liability of Governor

Gerow asserted claims against Governor Gregoire for negligence and tortious interference with a contact or business expectancy. But he presented no evidence that the governor was involved in any way in the denial of his application for the upgraded VIP or any retaliatory actions against him. On appeal, he presents no argument that the governor was liable for his claims. Therefore, we hold that the trial court did not err in dismissing all tort claims against Governor Gregoire.

   3.   Negligence Claims

Gerow argues that the trial court erred in dismissing his negligence claims against the Gambling Commission director. The State argues that the trial court correctly dismissed Gerow's negligence claims because, under the public duty doctrine, he could not show that there was a special relationship creating a duty to him. We agree with the State.

   a.   Legal Principles

The threshold determination in a negligence claim is whether the defendant owed the plaintiff a duty of care. *Cummins v. Lewis County*, 156 Wn.2d 844, 852, 133 P.3d 459 (2006). When the defendant in a negligence action is a governmental entity, the public duty doctrine provides that a plaintiff must show the duty breached was owed to him or her in particular rather than a duty owed to the public in general. *Munich v. Skagit Emergency Commc'ns Ctr.*, 175 Wn.2d 871, 878, 288 P.3d 328 (2012). This is because "a duty owed to all is a duty owed to none." *Id.*

There are four exceptions to the public duty doctrine. *Id.* at 879. One is the special relationship exception. *Id.* Under this exception, the governmental entity owes a duty to a particular plaintiff if there is a "special relationship" between the entity and the plaintiff that gives rise to such a duty. *Id.* A special relationship exists if three elements are established: (1) direct contact or privity between the public entity and the injured plaintiff that sets the plaintiff apart from the general public, (2) express assurances given to the plaintiff by the public entity, and (3) justifiable reliance by the plaintiff. *Id.*

Regarding the second element, assurances cannot be implied. *Cummins*, 156 Wn.2d at 855. Instead, the plaintiff "must have sought an express assurance" and "the government must have unequivocally given that assurance." *Id.*

b.    Special Relationship Analysis

Gerow argues that the three elements required for a special relationship are met because (1) he had privity based on his direct contact with commission staff and as the exclusive applicant for the upgraded VIP machine, (2) he was expressly told that the upgraded VIP machine did not comply and would not be approved, and (3) he relied on that erroneous denial to his detriment by not marketing the VIP machine which in fact complied with the rules.

But Gerow misconstrues the nature of the express assurance requirement. When the governmental entity expressly assures the plaintiff that it will perform an act, a special relationship is created and the entity may owe the plaintiff a duty to perform that act. *See Munich*, 175 Wn.2d at 881-84. For example, when a 911 operator assures a caller that law enforcement officers are on the way, a special relationship exists and the 911 entity owes the caller a duty to provide the promised assistance. *Id.* at 881-82.

Here, Gerow argues that the Gambling Commission and its director were negligent in wrongfully failing to approve his application for an upgraded VIP. A special relationship may have been created if the Gambling Commission had expressly assured Gerow that it would approve the application if he developed the upgraded VIP. But the Gambling Commission gave no such assurance. It expressly informed Gerow that it would *not* approve the application. The Gambling Commission's denial of Gerow's application obviously was not an express assurance that it would approve the application.

Gerow provides no authority for the proposition that requesting that a governmental entity perform an act somehow creates a special relationship giving rise to a duty to perform that act. Such a rule would convert every governmental entity's receipt of an application or request into a special relationship giving rise to an actionable duty to approve the application. No authority suggests that the special relationship exception should be extended so far. Instead, the remedy is to appeal the decision under the APA – which Gerow did.

Another case involving an emergency call to dispatch is instructive. In *Cummins v. Lewis County*, the plaintiff alleged that a county 911 dispatch unit was negligent in not responding when her husband called with a medical emergency. 156 Wn.2d at 850. She argued that calling 911 and requesting assistance was enough to create a special relationship because the 911 system provided an "inherent assurance" that assistance would be provided. *Id.* at 856. The Supreme Court rejected this argument, holding that a special relationship could be created only if the 911 operator actually gave the caller an unequivocal statement that assistance would be forthcoming. *Id.* at 855-56.

Because Gerow cannot establish the express assurance element of a special relationship, the public duty doctrine applies. Accordingly, we hold that the trial court did not err in granting summary judgment on Gerow's negligence claims.

4. Tortious Interference with a Contract or Business Expectancy

Gerow argues that the trial court erred in granting summary judgment in favor of the Gambling Commission director on his tortious interference with a contract or business expectancy claim. The State argues, among other things, that summary judgment was correct because Gerow failed to present evidence of a valid contract or business expectancy. We agree with the State.

a. Legal Principles

A claim of tortious interference with a contract or business expectancy requires "(1) the existence of a valid contractual relationship of which the defendant has knowledge, (2) intentional interference with an improper motive or by improper means that causes breach or termination of the contractual relationship, and (3) resultant damage." *Elcon*, 174 Wn.2d at 168.

A valid business expectancy is any prospective contractual or business relationship that would be of pecuniary value. *Manna Funding, LLC v. Kittitas County*, 173 Wn. App. 879, 897, 295 P.3d 1197 (2013). " 'All that is needed is a relationship between parties contemplating a contract, with at least a reasonable expectation of fruition. And this relationship must be known, or reasonably apparent, to the interferor.' " *Id.* (quoting *Scymanski v. Dufault*, 80 Wn.2d 77, 84-85, 491 P.2d 1050 (1971)).

"A plaintiff must show future business opportunities 'are a reasonable expectation and not merely wishful thinking,' but certainty of proof is not needed." *Life Designs Ranch, Inc. v.*

*Sommer*, 191 Wn. App. 320, 337, 364 P.3d 129 (2015) (quoting *Caruso v. Local Union No. 690, Int'l Bhd. of Teamsters*, 33 Wn. App. 201, 208, 653 P.2d 638 (1982)), *review denied*, 185 Wn.2d 1022 (2016). For example, in *Life Designs Ranch* the plaintiff met its burden to show a valid business expectancy through its historical referral and enrollment records to show that it could reasonably expect a certain number of referrals and enrollments. 191 Wn. App. at 337.

   b.   Analysis

Although Gerow does not specifically identify the "business expectancy" with which the Gambling Commission director interfered, his argument appears to be that the Gambling Commission's actions interfered with his relationship with his pull-tab machine customers. But there is no evidence that this relationship was affected. Gerow submitted his own declaration stating that his upgraded VIP machine "would have been competitive," but did not submit evidence that there were interested customers. Clerk's Papers at 699. "Conclusory statements and speculation will not preclude a grant of summary judgment." *Elcon*, 174 Wn.2d at 169.

Gerow also submitted declarations from William Tackitt and David Fretz. Tackett simply stated that he is a restaurant owner who offers pull-tabs and that he has been denied access to improved pull-tab technology. He did not say that he would have been interested in purchasing an upgraded VIP machine. Fretz stated that he operates cardrooms, but does not offer pull-tabs because they are not profitable. Fretz did not state that the upgraded VIP would have been profitable or that he would have been interesting in purchasing one.

Gerow could have presented evidence of sales of his VIP machine once it was approved or evidence that a cash card function made the upgraded VIP machine more marketable. Instead, he presented nothing more than wishful thinking and asked the trial court to assume without

evidence that there were customers interested in purchasing an upgraded VIP. Gerow's own statement that his upgraded VIP would have been competitive and the declarations of Tackett and Fretz are not sufficient to show Gerow had a valid contract or business expectancy with which the Gambling Commission interfered.

Accordingly, we hold that the trial court did not err in granting summary judgment in favor of the Gambling Commission director on Gerow's tortious interference with a contract or business expectancy claim.

## CONCLUSION

We affirm the trial court's dismissal of Gerow's claims against all defendants.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, A.C.J.

We concur:

_____
JOHANSON, J.

_____
MELNICK, J.

27