

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE___JUN 1 4 2018

_____
CHIEF JUSTICE

This opinion was filed for record

at__8:00 a.m.__ on _June 14, 2018_

_____
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| CYNTHIA STEWART, | ) | |
| | ) | |
| Appellant, | ) | No. 93759-1 |
| | ) | |
| v. | ) | |
| | ) | EN BANC |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF | ) | |
| EMPLOYMENT SECURITY, | ) | Filed: __JUN 1 4 2018__ |
| | ) | |
| Respondent. | ) | |
| | ) | |

YU, J.— Cynthia Stewart petitioned for judicial review of an administrative

decision that she is ineligible for unemployment benefits. Her petition is not

subject to the procedural statutes in the Employment Security Act (ESA), Title 50

RCW, which apply only to *administrative* review. Instead, her petition for *judicial*

review is governed by the procedural statutes in the Administrative Procedure Act

(APA), chapter 34.05 RCW. And pursuant to the APA, Stewart did not timely

serve her petition on the Employment Security Department (ESD). She therefore

failed to invoke the superior court's appellate jurisdiction as prescribed by law, and the court correctly recognized that it was required to dismiss this case. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Stewart suffers from migraine headaches and takes prescription medication to help manage her symptoms. Her former employer fired Stewart after she "came to work impaired due to prescription narcotics for the second time in a six-month period." Admin. R. at 189. Stewart's application for unemployment benefits was initially granted, but her former employer appealed, and an administrative law judge reversed. Stewart petitioned for review by the ESD commissioner, who affirmed that Stewart was ineligible for unemployment benefits.

Stewart then petitioned for judicial review of the commissioner's decision in superior court. She attempted to serve ESD by sending a copy of her petition by mail, but ESD did not receive it until 31 days after the commissioner's decision. Many months after appearing in the superior court proceeding, ESD moved to dismiss, contending that Stewart's service on ESD was untimely pursuant to RCW 34.05.542 and WAC 192-04-210. The trial court granted the motion, concluding that Stewart's service on ESD was completed 1 day too late and that dismissal was mandatory. Stewart sought direct review by this court, which we granted.

ISSUES

A.     Did Stewart timely serve her petition for judicial review on ESD?

B.     If not, was Stewart's petition subject to mandatory dismissal?

ANALYSIS

Since the 1930s, our legislature has maintained an unemployment compensation program "to prevent [the] spread and to lighten [the] burden" of "economic insecurity due to unemployment." RCW 50.01.010. The ESA provides substantive rules about which unemployed workers are eligible for benefits and the amount of benefits to be paid. It also includes specific procedural statutes for administering Washington's unemployment compensation program.

Among other things, these procedural statutes require multiple levels of administrative review of initial benefits decisions before the parties are permitted to seek judicial review of those decisions in superior court. Briefly, ESD, as the executive branch's designated administrative agency, makes the initial determination about eligibility and benefits. RCW 50.08.010. Then the claimant or employer may seek administrative review by an "appeal tribunal" (an appointed administrative law judge). RCW 50.32.010, .040. If any party disagrees with the decision of the administrative law judge, he or she may seek further administrative review by the ESD commissioner. RCW 50.32.070-.080. Only after the

commissioner issues a decision may the parties seek judicial review. RCW 50.32.090, .120.

In this case, Stewart petitioned for judicial review of the ESD commissioner's decision in superior court, and she mailed a copy of her petition to ESD. We must decide whether this mailing constituted timely service on ESD and, if not, whether the superior court properly dismissed this case.

A.     Stewart's petition was not timely served on ESD

As explained below, Stewart timely served her petition for review on ESD if, and only if, the ESA's procedural statutes apply in this context. Thus, the narrow, statutory question presented is whether the ESA's procedural rules apply when a party seeks judicial review of a commissioner's decision about a claimant's eligibility for unemployment benefits. We hold that they do not and, therefore, that Stewart did not timely serve her petition on ESD.

Pursuant to the APA, in order to timely perfect her appeal, Stewart was required to serve her petition on ESD "within thirty days after the agency action." RCW 34.05.542(3). The APA explicitly provides that "[s]ervice of the petition on the agency shall be by *delivery*." RCW 34.05.542(4) (emphasis added). "Delivery" for these purposes "shall be deemed to have been made when a copy of

4

the petition for judicial review has been *received* by the Commissioner's Office."[1] WAC 192-04-210 (emphasis added). It is undisputed that Stewart's petition was not actually received by ESD until 1 day after the 30-day deadline expired. Therefore, in accordance with the APA, service was untimely.

However, Stewart did put a copy of her petition addressed to ESD in the mail within the 30-day time limit, and the ESA's procedural statutes provide that a mailed petition is deemed "received" on the date it is postmarked. RCW 50.32.025(1). Therefore, service would be timely if the ESA's procedural statutes applied in this context. Whether they do is a question of statutory interpretation subject to de novo review. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

According to the plain meaning of the relevant statutes, the ESA does not apply. Moreover, the legislative history shows that the statutes' plain meaning accurately reflects the legislature's intent. We therefore hold that the APA applies and RCW 50.32.025 does not, so Stewart did not timely serve her petition on ESD.

---

[1] Service on the administrative agency is explicitly differentiated from service on the other parties and the attorney general. Those entities may be served by "mail," and service is "deemed complete upon deposit in the United States mail, as evidenced by the postmark." RCW 34.05.542(4); *see also* RCW 34.05.010(19). However, RCW 34.05.542(4) clearly provides that service on the agency must be by *delivery*, not by mail. We therefore reject Stewart's argument that WAC 192-04-210 invalidly conflicts with the APA.

1.    The statutes' plain meaning requires us to apply the APA

As Stewart correctly points out, the isolated language of RCW 50.32.025 could suggest that it applies here because that statute provides in general terms that it applies to a "petition from a . . . commissioner's decision." But we must consider the meaning of this language "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Campbell & Gwinn*, 146 Wn.2d at 11. In this case, related statutes make it clear that RCW 50.32.025 applies only to petitions for *administrative* review of a commissioner's decision. Petitions for *judicial* review are governed solely by the APA.

The ESA specifically provides that "[a]ny decision of the commissioner involving a review of an appeal tribunal decision, in the absence of a petition therefrom *as provided in chapter 34.05 RCW*, becomes final thirty days after service." RCW 50.32.090 (emphasis added). It further provides that "[j]udicial review of a decision of the commissioner involving the review of an appeals tribunal decision may be had *only in accordance with the procedural requirements of RCW 34.05.570*." RCW 50.32.120 (emphasis added). Where these more specific statutes apply, they must be given effect over RCW 50.32.025's general provisions. *Residents Opposed to Kittitas Turbines v. State Energy Facility Site Evaluation Council*, 165 Wn.2d 275, 309, 197 P.3d 1153 (2008). And according to

6

the plain meaning of these specific statutes, the APA governs the procedure for judicial review.[2] This is entirely consistent with the legislature's pronouncement that the APA "establishes the exclusive means of judicial review of agency action." RCW 34.05.510.

In this case, Stewart indisputably sought "[j]udicial review of a decision of the commissioner involving the review of an appeals tribunal decision." RCW 50.32.120. Therefore, the specific provisions of RCW 50.32.090 and .120 apply. And according to the plain meaning of those statutes, "[j]udicial review of a final administrative decision of the Commissioner of the Employment Security Department is governed by the Washington Administrative Procedure Act." *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

2.    The legislature intended the statutes' plain meaning

We must apply this plain meaning because the legislative history shows that it is exactly what the legislature intended. The legislature intentionally eliminated inconsistent, agency-specific procedural rules for seeking judicial review, first by enacting a single, statutory framework applicable to all agencies (the APA), and

---

[2] This reading does not make RCW 50.32.025's reference to petitions for review of commissioner's decisions superfluous. RCW 50.32.090 and .120 explicitly apply only to petitions for *judicial* review of a commissioner's decision. Those statutes thus have no effect on RCW 50.32.025's applicability to petitions for further *administrative* review. *E.g.*, RCW 50.20.160; RCW 50.29.070 (providing for administrative reconsideration of a commissioner's decision).

then by removing the procedural rules for judicial review from agency-specific

statutes (including the ESA). We therefore must apply the plain meaning of the

statutes in order to carry out our "fundamental objective . . . to ascertain and carry

out the Legislature's intent." *Campbell & Gwinn*, 146 Wn.2d at 9.

"Before 1959, there was no *generalized* administrative procedure in

Washington. Each state agency's rule-making or adjudicative process was

governed by each agency's respective statute." OFFICE OF ATT'Y GEN.,

ADMINISTRATIVE PROCEDURE ACT DESKBOOK 1-5 (5th ed. 2009). Therefore, the

ESA used to contain specific procedures for seeking judicial review of a

commissioner's decision, which provided in relevant part as follows:

> Such appeal shall be perfected by serving a notice of appeal on the
> commissioner personally, by personal service, or by mailing a copy
> thereof to the commissioner, and by filing the notice of appeal
> together with proof of service thereof with the clerk of the court and
> by complying with the requirements of this title relating to
> undertakings on appeal. The service and the filing together with proof
> of service of the notice of appeal and compliance with the provisions
> of this title relating to undertakings on appeal, all within thirty days,
> shall be jurisdictional.

Former RCW 50.32.120 (1971). When these specific procedures were part of the

ESA, a commissioner's decision became "final" after 30 days "in the absence of an

appeal therefrom as provided by this act." Former RCW 50.32.090 (1945).

However, in 1959, the Washington Legislature began moving toward

consistency for all judicial review of agency actions with an early version of the

APA, former chapter 34.04 RCW (1959). This early legislation provided general administrative procedural statutes and directed each agency to "adopt rules governing the formal and informal procedures prescribed or authorized by this act." LAWS OF 1959, ch. 234, § 2(1).

But the 1959 legislation did not repeal the specific procedural rules already contained in the ESA. Confusion therefore arose because there were two different sets of potentially applicable rules, and unlike the current statutes, the former statutes provided no guidance about which rules should apply in which circumstances. Agency Note on Proposed Technical Amendments to H.B. 420, at 1, 4, 43d Leg., 1st Ex. Sess. (Wash. 1973) (prepared by ESD). As a result, in 1973, the legislature amended the ESA "by making any decision of the commissioner reviewable according to the provisions of the state APA" and "by deleting the entire section dealing with superior court review of a commissioner's decision and requiring that such review be held only in accordance with the procedural requirements of the state APA." S.B. REP. ON H.B. 420, 43d Leg., 1st Ex. Sess. (Wash. 1973).

The lengthy statute governing judicial review procedures specific to the ESA was replaced with a straightforward directive: "Judicial review of a decision of the commissioner involving the review of an appeals tribunal decision may be had only in accordance with the procedural requirements of [former] RCW 34.04.130

[(1967)]." LAWS OF 1973, 1st Ex. Sess., ch. 158, § 16. Consistently, the provision governing finality of the commissioner's decision was amended to make it clear that the decision became "final" after 30 days unless a petition was filed "as provided in [former] RCW 34.04.130." *Id.* § 15. The statutory references have since been amended to reference current APA provisions, but they are substantively unchanged. RCW 50.32.090, .120.

It is true that former RCW 34.04.130 contained both substantive and procedural components, while current RCW 34.05.570 contains only substantive provisions. *See* dissent at 3-4. However, even if the legislature did intend its updated statutory references to effect a substantive change to RCW 50.32.120, as the dissent contends, it certainly did not intend any such change when it updated RCW 50.32.090, which unambiguously makes final "[a]ny decision of the commissioner involving a review of an appeal tribunal decision, in the absence of a petition therefrom *as provided in chapter 34.05 RCW*." (Emphasis added.) Chapter 34.05 RCW clearly includes the procedural requirements of RCW 34.05.542. There is thus no basis on which to conclude that the legislature intended to apply the APA's *substantive* rules to petitions for judicial review of ESD decisions, but nevertheless intended to exempt such petitions from the APA's *procedural* rules. *Contra* dissent at 4.

10

From this history, it is apparent that the legislature intended to make judicial review of ESD decisions subject only to the procedural rules of the APA. Therefore, we adhere to the general rule that "if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 9-10. We thus hold that the APA controls, that RCW 50.32.025 does not apply, and that Stewart did not timely serve her petition for judicial review on ESD.

B.    The superior court correctly ordered dismissal

In the alternative, Stewart contends that ESD waived or forfeited any argument about untimely service by failing to raise that issue until long after it appeared in the superior court proceeding. However, in accordance with our precedent, Stewart was required to comply strictly with the APA's perfection deadline before the superior court had authority to exercise its appellate jurisdiction pursuant to article IV, section 6 of the Washington Constitution. ESD has no authority to waive untimely service, either explicitly or by implication. We therefore affirm the superior court's order of dismissal.

Adjudicators in administrative agencies like ESD are "inferior courts" created by the legislature. CONST. art. IV, § 12. There is no independent constitutional right to judicial appeal from an inferior court's decisions in civil and administrative cases. *Residents Opposed*, 165 Wn.2d at 295. Rather, the

Washington Constitution provides that superior courts "shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties *as may be prescribed by law*." CONST. art. IV, § 6 (emphasis added).

In accordance with this constitutional structure, "'[w]hen reviewing an administrative decision, the superior court is acting in its limited appellate capacity, and all statutory procedural requirements must be met before the court's appellate jurisdiction is properly invoked.'" *Union Bay Pres. Coal. v. Cosmos Dev. & Admin. Corp.*, 127 Wn.2d 614, 617, 902 P.2d 1247 (1995) (quoting *City of Seattle v. Pub. Emp't Relations Comm'n*, 116 Wn.2d 923, 926, 809 P.2d 1377 (1991)). Thus, the legislature has the authority to enact procedural rules for invoking the superior courts' appellate jurisdiction to review the decisions of inferior courts in civil cases, while the superior courts have no authority to act in such cases unless their appellate jurisdiction is invoked as prescribed by law. *E.g.*, *Conom v. Snohomish County*, 155 Wn.2d 154, 157, 118 P.3d 344 (2005); *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 555, 958 P.2d 962 (1998); *Union Bay*, 127 Wn.2d at 617-18; *City of Seattle*, 116 Wn.2d at 926-27; *MacVeigh v. Div. of Unemployment Comp.*, 19 Wn.2d 383, 385, 142 P.2d 900 (1943). This constitutional limitation cannot be waived by any party, and "[a] court lacking jurisdiction must enter an order of dismissal." *Conom*, 155 Wn.2d at 157.

As we have previously held, compliance with statutory time limits for perfecting appeals from inferior courts is necessary "in order to invoke the jurisdiction of the superior court."[3] *Fay v. Nw. Airlines, Inc.*, 115 Wn.2d 194, 198, 796 P.2d 412 (1990). We have also held that the test for compliance is strict because "[i]t is impossible to substantially comply with a statutory time limit . . . . It is either complied with or it is not." *City of Seattle*, 116 Wn.2d at 928-29. Here, as discussed above, it was not.

The legislature, with its broad constitutional authority to prescribe rules for judicial review of decisions by inferior courts in civil cases, has had ample opportunity to amend the statutes if our interpretations were incorrect or if the consequences have proved harmful. It has not done so. In fact, the legislature itself has specifically provided that "[a]n agency may *not* modify time limits relating to rule-making procedures *or the time limits for filing a petition for judicial review specified in RCW 34.05.542.*" RCW 34.05.080(1) (emphasis added). We therefore reaffirm that "[b]y failing to serve its petitions within the 30

---

[3] We have clarified that some statutory procedural requirements for judicial review of agency actions do not, in fact, limit the superior courts' appellate jurisdiction. For instance, we held that a statute limiting review of Washington State Gambling Commission decisions to the Thurston County Superior Court merely "establishes the proper venue for judicial review" because, once the jurisdiction of the superior courts is invoked, *every* superior court has the power to hear and decide the case (that is, every superior court has subject-matter jurisdiction). *ZDI Gaming, Inc. v. Wash. State Gambling Comm'n*, 173 Wn.2d 608, 619, 268 P.3d 929 (2012). In this case, however, the appellate jurisdiction of the superior courts was not invoked because Stewart never timely perfected her petition for judicial review.

day time limit," a party "fail[s] to invoke the superior court's appellate jurisdiction."[4] *City of Seattle*, 116 Wn.2d at 929.

In this case, along with the commissioner's decision affirming denial of her benefits, Stewart received instructions for seeking judicial review, including a specific notice that "[t]o properly serve by mail, the copy of your judicial appeal must be received by the Employment Security Department on or before the thirtieth (30th) day of the appeal period." Clerk's Papers at 53. Stewart did not timely serve her petition on ESD in accordance with this notice. And by statute, the commissioner's decision became "final" when Stewart failed to perfect her petition for judicial review within 30 days. RCW 50.32.090. The superior court was therefore without authority to exercise its appellate jurisdiction over this case and properly determined that dismissal was mandatory.[5]

---

[4] We recognize that some federal cases have declined to treat certain procedural "'claim-processing'" statutes "as having 'jurisdictional' consequences." *Henderson v. Shinseki*, 562 U.S. 428, 435, 431, 131 S. Ct. 1197, 179 L. Ed. 2d 159 (2011). However, the relevant question is not whether *the court* should attach jurisdictional consequences to a procedural statute. The question is whether *the legislature* intended to do so, because the legislature "is free to attach the conditions that go with the jurisdictional label to a rule that we would prefer to call a claim-processing rule." *Id.* at 435. This is a question of statutory interpretation, and in the context of the APA's 30-day perfection deadline, we have already answered it. The legislature appears to agree with our answer, and Stewart does not otherwise show that our precedent is incorrect and harmful. We therefore decline to reconsider it. *State v. Otton*, 185 Wn.2d 673, 678, 374 P.3d 1108 (2016).

[5] Stewart briefly argues that mandatory dismissal violates her federal constitutional right to procedural due process. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). However, Stewart's argument on this topic is limited in substance to her contention that ESD's statutory interpretation is unfair. That is not the relevant inquiry. *See id.* at 335. We therefore decline to hold that Stewart has shown any federal procedural due process violation.

14

## CONCLUSION

The APA is the only source of procedural rules applicable to Stewart's petition for judicial review from the commissioner's decision, and Stewart did not timely serve ESD in accordance with the APA. Therefore, Stewart never invoked the superior court's appellate jurisdiction as prescribed by law, and dismissal was mandatory. We affirm.

_____
 Yu, J

WE CONCUR:


_____
 Fairhurst, CJ.


_____


_____
 Madsen, J.


_____
 González, J.

 Leon McCoy, J.


_____


16

No. 93759-1

WIGGINS, J. (dissenting)—The legislature has emphatically declared that "economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state." RCW 50.01.010. Accordingly, the legislature has assumed responsibility for its combat: "involuntary unemployment . . . requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his or her family." *Id.* In answering this call, the legislature recognized that we, the court, may ultimately have a role to play in "protecti[ng] against this greatest hazard of our economic life" and instructed us accordingly:

> [T]his title shall be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum.

*Id.*

The majority does not construe the Employment Security Act (ESA) liberally to minimize the suffering caused by unemployment. Instead, the majority holds that service on the Employment Security Department (ESD) is complete only when ESD receives the petition, ultimately making it more difficult for the unemployed to obtain relief. Because the statutory language and the specific legislative direction to interpret the ESA liberally to relieve suffering indicate that service on ESD is complete upon mailing, I respectfully dissent.

## ANALYSIS

I.    The Administrative Procedure Act (APA), chapter 34.05 RCW, is a general statute, and RCW 34.04.130 no longer exists

The majority holds that we must give effect to the APA's service requirements over the ESA's service requirements and that Cynthia Stewart's petition was therefore untimely. The majority reaches this conclusion by misapplying the canon of statutory construction that the specific governs the general and by relying on language from prior versions of the ESA and APA that does not exist in the current statutes.

First, the majority mistakenly identifies the APA as a specific statute and the ESA as a general statute. The majority then applies the well-settled rule of statutory construction that the specific statute must be given effect over the general statute and holds that the APA, as a specific statute, must be given effect over the ESA, as a general one. Majority at 6. However, this court has repeatedly determined that the APA is a general statute that should not be given effect over a more specific statute. *Muije v. Dep't of Soc. & Health Servs.*, 97 Wn.2d 451, 453, 645 P.2d 1086 (1982) (determining that the APA is a general statute because it "only deals generally with review of 'any' agency decision," and holding that the State Civil Service Law is a specific statute and thus must be given effect over the APA).[1]

---

[1] *See also Olson v. Univ. of Wash.*, 89 Wn.2d 558, 562, 573 P.2d 1308 (1978) (determining that the State Higher Education Personnel Law (HEPL), not the APA, governs an agency appeal because the HEPL was the more specific statute); *Residents Opposed to Kittitas Turbines v. State Energy Facility Site Evaluation Council*, 165 Wn.2d 275, 309, 197 P.3d 1153 (2008) (holding that the Growth Management Act is a general statute and the energy facilities site locations act is a specific statute and that the order in which the statutes were passed did not matter: "if the general statute was enacted after the specific statute, this court will construe the original specific statute as an exception to the general statute, unless expressly repealed").

2

Second, the majority relies on language from former versions of the ESA and the APA that does not exist in the current versions of the statutes.

The majority correctly points out that pre-1988, the ESA required judicial review to be had "'in accordance with the procedural requirements of [former] RCW 34.04.130'" of the APA, which provided an extensive procedural framework for judicial review. Majority at 9 (alteration in original) (quoting LAWS OF 1973, 1st Ex. Sess., ch. 158, § 18). However, the legislature has since entirely replaced the APA and rewritten former RCW 34.04.130, recodifying it as RCW 34.05.570. LAWS OF 1988, ch. 288, § 706. The legislature amended the ESA accordingly, to note that judicial review must now be in accordance with RCW 34.05.570. RCW 50.32.120.

Without quoting language from either statute, the majority asserts that the revised APA provision—RCW 34.05.570—is "substantively unchanged" from the former APA provision—RCW 34.04.130—and thus the APA's service rules still apply. Majority at 10.

This is incorrect.[2] In fact, there is (among many) one difference particularly important to this case: the former APA provision included service requirements; the revised APA provision does not.[3]

---

[2] The legislature struck the entire extensive procedural framework from the section and scattered it among more than a dozen new provisions. LAWS OF 1988, ch. 288, § 516; RCW 34.05.510-.598. The revised APA provision includes only substantive requirements for judicial review, such as the burden of proof and the standard of review. RCW 34.05.570.

[3] The majority concedes that RCW 34.05.570 contains no service requirements applicable to this case. *See* majority at 10 ("RCW 34.05.570 contains only substantive provisions."). However, it inexplicably maintains that the updated references are "substantively unchanged." *Id.*

3

Contrary to the majority's assertion, the new APA's service requirements are found in an entirely different provision of the APA—RCW 34.05.542. The ESA does not cite or refer to .542 whatsoever. Thus, the majority's unsupported assertion that the ESA's current reference to .570 is substantively unchanged from the ESA's prior reference to the former APA provision is wrong.

In fact, both parties agree that the ESA's reference to .570 does not support the contention that the APA's service requirements apply. This was made apparent when, during oral argument, ESD argued for the first time that the code reviser made an error when the reviser referred to RCW 34.05.570 instead of RCW 34.05.542. However, the reference to .570 was made correctly at the instruction of the legislature and not in error. See LAWS OF 1988, ch. 288, § 706; former RCW 50.32.120 (1988); H.B. 1515, 50th Leg., Reg. Sess. (Wash. 1988).

II.     The APA service requirements are subject to the requirements of the ESA

The majority concedes that the language of the ESA "could suggest that it applies" but nonetheless holds that the ESA does not apply to the service of a petition for judicial review on ESD. Majority at 6. I would apply the plain meaning of the current statutes and adhere to the specific legislative direction to liberally interpret the ESA to alleviate the privations of unemployment. Accordingly, I would hold that the ESA's service requirements govern Stewart's petition for judicial review and therefore service was complete upon mailing. Thus, Stewart's petition was timely.

If the meaning of a statute is plain on its face, the court must give effect to that meaning in the context of "all that the Legislature has said in the statute and related

4

statutes which disclose legislative intent about the provision in question." *Dep't of Ecology v. Campbell & Gwinn*, LLC, 146 Wn.2d 1, 10-11, 43 P.3d 4 (2002).

The ESA and the APA both outline applicable service requirements. The majority asserts that language in the ESA at RCW 50.32.090 requires us to apply the APA's service requirements, found at RCW 34.05.542. RCW 50.32.090 states, "Any decision of the commissioner involving a review of an appeal tribunal decision, in the absence of a petition therefrom as provided in chapter 34.05 RCW, becomes final thirty days after service." The majority asserts that the ESA's reference to the APA implies that the APA's procedural rules apply here because "[c]hapter 34.05 RCW clearly includes the procedural requirements of RCW 34.05.542." Majority at 10.

The flaw in this reasoning is that the APA itself, in RCW 34.05.542, declares that service under the APA is "[s]ubject to other requirements of this chapter or of another statute." RCW 34.05.542. Therefore, application of the APA's service requirements is subject to the requirements of other applicable statutes, and relevant here are the service requirements of the ESA. The majority wholly ignores this language.

Here, the ESA is "another statute" with applicable service requirements. The service rules found in the ESA apply to the "appeal or petition from a determination, redetermination, order and notice of assessment, appeals decision, or commissioner's decision." RCW 50.32.025. This language is unambiguous. The statute limits the actions it governs—an appeal or petition—and it limits the actions that may be petitioned or appealed *from*—a determination, redetermination, order and notice of

5

assessment, appeals decision, or commissioner's decision. *Id.* But the statute does not limit the decision-making body that may consider petitions and appeals. *See id.*

Stewart appealed the commissioner's denial of her unemployment benefits to the superior court. The plain language of the ESA encompasses Stewart's petition for judicial review from the commissioner's decision because it is a "petition from a . . . commissioner's decision." *Id.*

Under the APA, therefore, service of Stewart's petition for review of a commissioner's decision is "[s]ubject to other requirements" of the ESA. Under the ESA, a petitioner may serve ESD by mail and service is complete upon mailing. *Id.* Accordingly, Stewart completed service on ESD when she put her petition in the mail. Thus, Stewart's service on ESD was timely.

## CONCLUSION

The legislature passed the ESA to protect the unemployed worker, upon whom the burden of involuntary unemployment "falls with crushing force." RCW 50.01.010. However, this protection is meaningful only if the ESA provides the involuntarily unemployed a well-defined process for seeking relief. Under the majority's holding, the 30-day window begins to run when ESD puts the order in the mail, and petitioners must now account for the time it will take their mailed petition to arrive at the agency. Those who live far from Olympia will be doubly disadvantaged, as they must wait longer for an order to arrive and must provide more time for their petition to reach ESD. Unless petitioners use certified mail—which requires additional spending—they will be faced with uncertainty as to when and whether their petition is received.

6

Individuals often represent themselves in negotiating unemployment proceedings, without a lawyer to help navigate the process or interpret conflicting language. It is for this reason that our court has been instructed to "liberally construe" the statute to minimize the strain of involuntary unemployment. *Id.* The plain language of the current statutes and the legislature's instruction indicate that service of a petition for judicial review on ESD is complete upon mailing. Therefore, I respectfully dissent from the majority's interpretation of the ESA and the APA. I would reverse the order of dismissal and remand for further proceedings.

Wiggins, J.

Johnson, J.

Owens, J.

Stephens, J.